HORACE BILLINGS, Respondent, v. HENRY AMES *et al.*, Appellants.

*Jurisdiction—Patent.*—The courts of the State have jurisdiction in cases of contracts in which patents are brought in collaterally. When the defendants, who had been sued for a breach of the plaintiff's patent for putting up cemented hams, agreed with the plaintiff that if he would dismiss the suit againt them, and allow them the partial use of the patent for the year, they would not manufacture or put up cemented hams of any kind during the existence of the patent; *held*, that the suit upon such contract was properly brought in the State courts.

*Restraint of Trade.*—*Held*, also, that such contract was not void, as being in restraint of trade. (Presbury v. Fisher & Bennett, 18 Mo. 50, cited.)

*Contract—Construction.*—*Held*, also, that such contract not only prohibited the defendants from putting up the article covered by the patent, but from putting up articles resembling those described in the patent and liable to compete therewith in market.

*Damages.*—In an action upon such contract, the measure of damages was properly declared to be the amount the plaintiff's hams had depreciated in price by the cemented hams put up and sold for defendants, after the expiration of the year mentioned in the contract, and before the commencement of this suit.

*Appeal from St. Louis Court of Common Pleas.*

*J. A. Buchanan,* with *Glover & Shepley,* for appellants.

I. The St. Louis Common Pleas had no jurisdiction of the cause of action. The action was substantially for the infringement of a patent right, of which only the courts of the United States have jurisdiction. (5 Stat. U. S. 117; act July 4, 1836; 2 Kent. 405; Curtis on Pat., § 405; Parsons v. Barnard, 7 J. R. 144; Gilson v. Woodworth, 8 Paige, 132; Dudley v. Mayhew, 3 Comst. 9.)

The error is not cured by verdict. A verdict will cure a title defectively set out, but not a defective title. (Rushton v. Aspinwall, 1 Smith's L. C. 334; Andrews v. Lynch, 27 Mo. 167.)

II. The defendants were entitled to prove that the plaintiff's recipe had been known and used prior to plaintiff's patent. The evidence would have been admissible in a suit for the infringement of the patent. (Hotchkiss v. Greenwood, 11 How. 248.) In this case defendant had the same right, *a*, to show that plaintiff had no right to a patent, and, therefore, there was no consideration for the agreement, (Joliffe v. Collins, 21 Mo. 338, 343; Dickinson v. Hall, 14 Pick. 220; Van Ostrand v. Reed, 1 Wend. 424;) and, *b*, in mitigation of damages, (Segman et al. v. McCormick, 16 How. 480.)

III. The defendants were entitled to prove that the hams branded "G. J. Griggs" were put up according to a recipe different from the plaintiff's, thus to show that defendants had not violated their agreement. (Keflinger v. De Young, 10 Wheat. 358; Carson v. Hyde, 16 Pet. 513; 2 Greenl. Ev. § 496; Honey v. Pitcher, 13 Mo. 191; Pitcher v. Honey, 16 Mo. 436; Rich. v. Atwater, 16 Conn. 409.)

IV. The contract between the parties was in effect that defendants would not violate the patent of plaintiff. *a*. It so appears from the circumstances under which the contract was made. (2 Pars. Cont. 12; Patterson v. Camden, 25 Mo. 13; Rich v. Atwater, 16 Conn. 409; Player v. Homersham, 4 M. & S. 422; 3 Barr & Ald. 175; 2 Ves. 310; 1 Cowen, 122; Coup. 9.) *b*. Because, the construction the plaintiff puts upon the contract would make it a contract in restraint of trade, and therefore void. (2 Pars. Cont. 121; Rich v. Atwater, 16 Conn. 409; Clark v. Pinney, 7 Cow. 681; Hardcastle v. Hickman, 26 Mo. 476; 1 How. 169; 19 Me. 394; 8 Mass. 216; 5 Barr & Ald. 606; 4 M. & S. 42; 38 Me. 367; 8 Mass. 183; 5 T. R. 522.)

V. The contract, if in restraint of trade, was void. (2 Pars. Cont. 254 & 257, and notes; Alger v. Thatcher, 19 Pick. 51; Chit. Cont. 664; Mitchell v. Reynolds, 1 Smith's L. C., 174; Ward v. Byrne, 5 M. & W. 547, 561, 562; Price v. Green, 16 M. & W. 346; Chappell v. Brockway, 21 Wend. 157.)

VI. The measure of damages laid down by the court was erroneous. By the instruction, the plaintiff could recover remote and speculative damages, and therefore it was erroneous. (2 Pars. Cont. 454; Bridges v. Stickney, 38 Me. 361; Hadley v. Boxendale, 9 Exch. 241.)

· *a.* The agreement being that defendant shall not violate plaintiff's patent, the plaintiff could only recover the profits defendants had made, and the burden of proof as to this amount was upon the plaintiff. (Segman v. McCormick, 16 How. 487; City New York v. Ransom, 23 How. 487; Curtis on Part., § 251; 2 Pars. Cont. 458.)

*b.* If the agreement prevented defendants putting up cemented hams of any kind, the plaintiff could only recover such damages as were the immediate and necessary result of the breach of contract. (Mayne on Dam. 6 & 52; Bridges v. Stickney, 38 Me. 361; Batchelder v. Sturgis, 3 Cush. 201; Fox v. Harding, 7 Cush. 516; Bradley et al. v. Denton, 3 Wis. 557; Barnard v. Poor, 21 Pick. 378; Chapin v. Norton, 6 McLean, 500; Hamlin v. Gt. Western Railway, 38 Eng. L. & E. 335; Sedg. Dam. 104.)

*G. P. Strong*, for respondent.

I. The court had jurisdiction of the cause of action. The suit was not upon the patent, nor for an infringement of the patent, but for the breach of a contract collateral to the patent, as much so as if it had been upon a note given for a patent right.

It is only in actions directly upon the patent that the jurisdiction of the federal courts is exclusive. (7 J. R. 144; 16 Conn. 409.)

The contract is not void as being in restraint of trade. (Presbury v. Fisher, 18 Mo. 50; Chit. Cont. 663; Chappell v. Brockway, 21 Wend. 158; Ross v. Sadgbear, 21 Wend. 166; Whittaker v. Howe, 3 Beav. 383, 393; Mitchell v. Reynolds, 1 P. Wms. 181; 1 Smith's L. C. 172; Perkins v. Lyman, 9 Mass. 494, 500.)

The contract was limited as to space. It was reasonable. It was limited as to time.

III. The court correctly laid down the rule by which to estimate damages. (2 Pars. Cont. 454, 461; Alder v̇. Keightly, 15 Mee. & W. 117; 13 How. 307.)

BAY, Judge, delivered the opinion of the court.

Plaintiff brought suit against defendants in the St. Louis Court of Common Pleas for an alleged breach of contract, which contract is as follows:

"ST. LOUIS, March 5, 1856.

"*Mr. Horace Billings.* — Dear Sir: In consideration of your withdrawing the suit brought against us in New York, for infringing your patent for putting up cemented hams, and for the privilege of putting up fifty thousand hams this year and selling, them, we hereby agree and bind ourselves to put up no more cemented hams of any kind without your consent during the existence of your patent.

HENRY AMES & Co."

Plaintiff alleges in his petition that in pursuance of said agreement he caused the suit mentioned therein to be dismissed, and that defendant exercised the privilege of putting up and selling, during the year 1856, the number of hams specified in the agreement. The petition further alleges, as a breach of said agreement, that in the years 1857 and 1858, defendants, without the consent of plaintiff, put up and sold in the New York market a large number of cemented hams. Plaintiff further states that in 1857 he put up and sold in the New York market 29,456 lbs. of cemented hams, put up according to his patent; and in 1858, 930,604 lbs.—one-half of the latter for account of Nolte & McClure, of Illinois; that during said year the demand in New York for cemented hams was limited, and almost exclusively for the California market; that by reason of the breach of said contract by said defendants, the price of the cemented hams of plaintiff, sold as aforesaid, depreciated to the extent of half a cent per pound, and plaintiff lost that amount.

The answer of defendants sets up a want of jurisdiction in the Court of Common Pleas, also an agreement executed by plaintiff in the words and figures following, to-wit:

"St. Louis, March 5, 1856.

"In consideration of three thousand dollars, the receipt of which is hereby acknowledged, I hereby agree to cause to be dismissed the suit brought against Henry Ames and Edgar Ames, in New York, for infringing my patent for the covering of hams, and also release them from all damages from any infringement of said patent heretofore; and also give them the privilege of putting up fifty thousand hams this year in the same manner as they have heretofore covered them, which privilege expires this year, with the understanding that they are to put up no more cemented hams without my consent during the existence of my patent.

HORACE BILLINGS."

The answer denies any violation of the agreement, and avers that since the year 1856 the defendants have not put up any cemented hams according to the method shown by the patent of plaintiff; that one George W. Griggs had invented a preparation or composition for covering hams different entirely from that of the plaintiff, and that he (Griggs) had put for the defendants a number of hams openly marked with the name of said Griggs.

Upon the trial plaintiff read in evidence his patent from the government, bearing date March 25, 1851, giving him the exclusive right, for the term of fourteen years, of making, constructing, using, and vending to others to be used, his composition for covering hams. Also, the record of the suit brought in New York against defendants for an infringement of the patent referred to in the agreement, and the dismissal of the same. A large number of depositions of commission merchants in New York, some of whom were doing business in California, were read in evidence, all tending to prove that in 1857 and 1858 the Billings hams commanded a higher price in the California market than any other hams; that

during said years defendants consigned to commission houses in New York and California for sale a very large number of cemented hams, resembling in appearance the hams of plaintiff, but marked with the name of Griggs; that they were well understood to be Ames' hams, put up by Ames, and by him directly consigned. The consignees knew no such man as Griggs; that these hams came in competition with those of Billings, the market being limited, and depreciated the sale and price of plaintiff's hams one cent per pound. The depositions show the number and amount of hams so consigned by defendants during said years, and the number and amount put in market by plaintiff.

The defendants gave in evidence the contract set out in their answer, and evidence tending to show that, by permission of plaintiff, they put up for him, in 1857, 19,834 cemented hams, branded with the name of G. W. Griggs, and shipped the same to Woodruff, of New York, for plaintiff, and received payment therefor from Henning & Woodruff, of St. Louis, on account of plaintiff.

Defendants then offered to prove that the cement used by plaintiff was composed of rosin, shellac and linseed oil, and that his composition was known and used by other pork-packers prior to 1850; that the cement used by Griggs was composed of rosin, cotton-seed oil and Venetian red, and was essentially different from plaintiff's; that none of the hams put up by Griggs for the defendants since 1856 had been put up with the cement of plaintiff, but had been put up with the cement of Griggs. Plaintiff objected to the introduction of such testimony, and the objection was sustained by the court.

The following instructions were given in behalf of the plaintiff:

1. If the jury believe from the evidence that the defendants, either by themselves or their agents, had, prior to the commencement of this suit, put up cemented hams of any kind since the year 1856, and during the continuance of plaintiff's patent, without the consent of plaintiff, they will

find for the plaintiff, and assess such damages as they believe from the evidence plaintiff has sustained by reason of defendants so putting up said hams.

2. If the jury find for the plaintiff under the first instruction, the measure of damages in the case is the difference between the market value or price of the cemented hams put up and sold for the plaintiff during the years 1857 and 1858, and the market value or price such hams would have borne if defendants had not put up and sold any cemented hams during those years; or, in other words, the amount that plaintiff's hams were depreciated in price by the cemented hams put up, or put up and sold for the defendants during those years, and before the commencement of this suit.

The court then gave the following instructions in behalf of defendants:

1. Under the contract read in evidence, the defendants are permitted to put up fifty thousand cemented hams during the year 1856, and there is no restriction as to the time within which defendants might sell these hams. The plaintiff can not recover without proving that he was damaged by the sale by defendants of cemented hams put up beyond this limit of fifty thousand in 1856, and the burden of proof on these points is upon the plaintiff.

2. The plaintiff cannot recover any damages against the defendants by reason of 19,834 cemented hams put up by defendants, branded with the name of G. W. Griggs, and sent to Woodruff & Co. on the order of the plaintiff in 1857, if the said hams were so put up and sent on the plaintiff's account.

And the court refused the following, asked by defendants:

3. The plaintiff cannot recover for any hams put up by defendants after the commencement of this suit, and the burden of proof is on the plaintiff to show when any hams spoken of by the witnesses were actually put up.

4. If the jury believe from the evidence that the depreciation of the price of the hams of plaintiff was caused by the

want of protection afforded by his patent, and not by the number of cemented hams which defendants put into the market, they cannot give damages on this account against defendants.

The jury found for the plaintiff, and assessed his damages at $4,320. Motions for new trial and in arrest of judgment were overruled, and the cause is brought here by appeal.

The appellants urge the following grounds for the reversal of the judgment :

1. Want of jurisdiction in the Court of Common Pleas.

2. That the contract is void as in restraint of trade.

3. That the court erred in excluding testimony offered by defendants.

4. That the court erred with reference to the measure of damages.

These necessarily involve the propriety of the instructions given and refused, and will be noticed in the order stated.

First—As to the question of jurisdiction. It is insisted by the appellants that this is virtually and in effect a suit for an infringement of a patent right, and therefore only cognizable in the Federal courts. We think differently. It is a suit upon a contract in which the patent is brought in collaterally ; and while it is well settled that the validity of a patent right is a subject peculiarly within the jurisdiction of the courts of the United States, it is equally well settled that when it comes in question collaterally its validity may become a subject of inquiry in the State courts. (Rich v. Atwater, 16 Conn. 409 ; Bliss v. Negus, 8 Mass. 46 ; Cross v. Huntly, 13 Wend. 385.)

This is not a suit for the infringement of a patent, nor for the establishment of a patent, nor to restrain a party from manufacturing or selling an article which is the subject of the patent of another. The cases, therefore, of Parsons v. Barnard, 7 John. 143, and Dudley v. Mayhew, 3 Comstock, 9, cited and relied on by appellants, are not in point. Parsons v. Barnard was an action on the case for a direct infringement of a patent, and Dudley v. Mayhew was a bill in

chancery to restrain the defendant from manufacturing and selling a particular kind of stove which was the subject of a patent issued by the government to the complainant. We entertain, therefore, no doubt in regard to the jurisdiction of the Court of Common Pleas.

We see no force in the objection to the validity of the contract, that it is in restraint of trade. It does not prohibit the defendants from engaging in the pork-packing business, nor in putting up and selling hams, but simply restrains them for a limited time in the use of a cement for covering hams, especially one used by plaintiff, and only useful in covering hams destined for a distant market. It is not in any sense a contract prohibiting the pursuit of an occupation, or the carrying on of a particular business; nor does the restraint in anywise affect the public at large; nor is it, in view of the circumstances of the case, unjust or unreasonable. The case of Presbury v. Fisher & Bennett, decided by this court and reported in 18 Mo., p. 50, is certainly more liable to the objection than the one at bar. Fisher & Bennett were publishers of a counterfeit detector, and sold out their interest to Presbury, and for a valuable consideration bound themselves in a penal bond not to engage thereafter in the business of publishing such a paper. The court upheld the bond, notwithstanding the restraint was unlimited as to space. The rulings of the English courts, growing out of their peculiar laws respecting apprenticeship, have never been regarded as authority here upon questions of this kind.

The third ground of error is, that the court excluded certain testimony offered by defendants. Whether this is well taken depends upon the construction which is to be given to the contract. It is insisted by the appellants that the words in the written agreement, *cemented hams of any kind*, must be construed to mean *contrary to plaintiff's patent*. If this construction is to be given to it, then it is senseless and without meaning. It would be a contract not to do a thing which the law itself prohibits the party from doing; in other words, it would be an agreement not to infringe upon the patent of

the plaintiff, which, in the absence of any agreement, Ames could not do without subjecting himself to an action for damages. It would place the parties in the ridiculous attitude of making a contract which imposed no obligation and conferred no benefit upon either.

It is a settled rule of construction, that, in construing a written instrument, the court will give effect to every clause and word, provided that it be consistent with the intention of the parties as gathered from the general tenor of the instrument and the motives which led to the agreement.

Apply this rule to the contract here sued on, and there can be no difficulty in giving it a proper construction.

The defendants were large dealers in putting up hams for the New York as well as the California market, and prior to the execution of the agreement had thrown into those markets large quantities of cemented hams, not only coming in competition with plaintiff's hams, but infringing upon his patent. For such infringement plaintiff sued defendants in the city of New York, laying his damages at $30,000. To get rid of this suit, and to obtain the privilege of putting up 50,000 cemented hams during the year 1856, were of the utmost importance to the defendants, to accomplish which they agreed to put up no more cemented hams *of any kind* during the existence of plaintiff's patent.

Now if we give to this agreement the construction asked by defendants, the only consideration for dismissing the suit and permitting defendants to put up 50,000 hams during 1856, was the naked and worthless promise not to infringe upon the patent of the plaintiff; in other words, a promise not to do a thing which the defendants were prohibited by law from doing, and therefore furnishing no consideration and conferring no benefit. We must presume that the parties intended to accomplish something by the agreement. It is evident that the object of Billings was to avoid competition. He was apprehensive that Ames might use a cement different from his in its materials, and therefore not infringing upon his patent, yet so resembling his as to produce a serious

competition.  To avoid this, the words *of any other kind* were inserted in the agreement.  This construction not only gives the instrument an intelligible meaning, but is consistent with the intention of the parties, as shown by the surrounding circumstances.

In this view of it, the court below very properly rejected the evidence offered by defendants.

The fourth ground urged by appellants for the reversal of the judgment is that the court erred with respect to the measure of damages.  The rule laid down by the court was, the amount that plaintiff's hams had depreciated in price by the cemented hams put up, or put up and sold for defendants during the years 1857 and 1858, and before the commencement of this suit.  It is insisted that these are remote and speculative, and, therefore, do not constitute the true measure of damages.  We are of the opinion, however, that it is not subject to this objection.  It relates to a fact already transpired, and capable of proof.  The fact that a particular article bears a certain market price can be proved like any other fact; and that it depreciated by reason of a large influx of the same article, and the amount of such depreciation, are equally capable of proof, and do not in any sense invoke the vague and uncertain opinions of witnesses as to a future rise or fall.  The market value of flour in St. Louis in 1861 can be ascertained by the testimony of witnesses who dealt in the article; but if a witness should give an opinion as to what it will be worth in 1863, it would be a mere matter of speculation, and subject to the objection above stated.  So in regard to the future profits of a boat, or of any trade or business; evidence relating thereto is always excluded upon the ground of its being remote, uncertain and speculative.

We see no error in the instructions given by the court, nor do we think the court erred in refusing the third and fourth instructions of defendants.  The third instruction was substantially given in the second instruction of the plaintiff, and there was no evidence in the cause to warrant the fourth instruction.

Upon the whole, we think the verdict is for the right party, and fully supported by the evidence. The other judges concurring, the judgment will be affirmed, with ten per cent. damages.