PHILIP ROSENBERG *vs.* MYER SCHRAER.

Bristol.    October 27, 1908. — November 24, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Equity Pleading and Practice,* Parties, Findings on master's report.    *Partnership. Trust.*

In a suit in equity by a member of a partnership against a third person for an accounting, where it appeared that the plaintiff assigned to the defendant a mortgage worth $675 belonging to the plaintiff individually and $250 of money belonging to the partnership, both to be used by the defendant in paying the creditors of the firm, and the defendant admitted that the $250 was not applied by him to the payment of the debts of the firm, but contended that as the money belonged to the partnership it could be recovered only in a suit brought by all the members of the partnership, it was *held,* that the agreement between the plaintiff and the defendant, so far as it related to partnership property, was made by the plaintiff as trustee for the firm, and that the action was brought properly in the name of the trustee.

Upon an appeal from a decree overruling exceptions to a master's report in a suit in equity, this court may draw inferences of fact from the facts reported by the master, whether the master drew such inferences or not.

BILL IN EQUITY, filed in the Superior Court for the county of Bristol June 6, 1904, for an accounting.

The case was referred to a master, who filed a report, which contained, besides the findings stated in the opinion, the following:

"As to the first item of $250 the plaintiff testified that on the morning of December 11, 1902, he and the defendant went together to the National Union Bank where the plaintiff's firm kept their bank account; that while there the defendant wrote and the plaintiff signed a check for $250 payable to the defendant, which was cashed, the defendant taking the money; that it was agreed between them that this money was to be used in settling with creditors ; that Schraer agreed to see Ettenson [the creditor who had attached the firm property] and get this attachment taken off, and that the money was not used as agreed. . . . I think that the plaintiff's story about this transaction is substantially true, and I find that the defendant received from the plaintiff on December 11, 1902, for the purpose and on the agreement stated by the plaintiff, the sum of $250 which has never been repaid, nor applied as agreed. . . . I find

that the plaintiff made this payment to the defendant without the knowledge of the plaintiff's partners; that the plaintiff owed no considerable debts outside of the firm liabilities, and desired to have the firm liabilities taken care of; that this money was paid to the defendant by the plaintiff out of what both knew were firm funds, for that purpose; and that the plaintiff in making this payment and the agreement with the defendant before stated had in view his own personal advantage, and intended to act on his own account, and not on the firm account."

The defendant excepted to the master's report on the ground that the members of the plaintiff's firm, and not he, should have brought the suit for the $250. The exception was overruled and the report confirmed by *Holmes,* J., and the case was recommitted to the master to give the defendant an opportunity to account for the $250. In a supplemental report the master found that the defendant should be charged with $250. *Dana,* J., confirmed the supplemental report and made a final decree accordingly, from which the defendant appealed.

*F. A. Pease,* for the defendant.

*C. P. Ryan,* for the plaintiff, was not called upon.

LORING, J. It appears from the master's report that the plaintiff and three others were partners "in the clothing and furnishing business" before the afternoon of December 11, 1902. On the morning of that day an attachment of the firm property was made, and in the afternoon a general assignment was made by the firm to one Ettenson, attorney for the attaching creditor.

The plaintiff owned as his separate property a mortgage for $775, made by one Perrusse, pledged for a private loan to him, amounting to $100. "Under date of December 10, 1902," the plaintiff assigned this mortgage and on December 11 he paid to the defendant $250, the proceeds of a check drawn on the firm bank account, both to be used in paying the firm debts. The fact that this $250 was the proceeds of a firm check was known to the defendant.

The defendant conceded that the $250 was not applied to the payment of the debts of the firm. His story was that he cashed the check by handing to the plaintiff $150 on December 10, and the balance on the morning of December 11. The master did not believe the defendant's story, and (as we have said) found

that the $250 was paid to the defendant to be used with the Perrusse mortgage in paying the creditors of the firm.

One of the many contentions put forward by the defendant before the master, and the only one insisted upon here, is that the $250, being firm money, belongs to the firm and not to the plaintiff, and can be recovered only in a suit brought in the name of the firm. In support of this contention he relies on *Hewes* v. *Bayley*, 20 Pick. 96.

The primary fund for the payment of firm debts is firm property. For that reason it was the duty of the defendant to apply the firm's $250 to the payment of the firm's debts in the first instance, and only after that fund had been exhausted to have recourse to the Perrusse mortgage. It would follow that (were there nothing else in the case) since only $250 out of the $900 was not applied to paying the firm debts, the money now in the defendant's hands belongs to the plaintiff and not to the firm.

But there is something else in the case. The master found that after March 31, 1903, "the defendant continued to deal with the plaintiff and to sell the plaintiff goods, the balance due from the plaintiff to the defendant being usually about $200." Shortly before April 5, 1904, the defendant sued the plaintiff for the balance then due. On April 5, 1904, the parties made a settlement by which the plaintiff paid the defendant $175 and the defendant gave the plaintiff a release of all demands in consideration of the $175 and the Perrusse mortgage. The master found "that the Perrusse mortgage became at that time, if it had not become before, the absolute property of the defendant." It appears from the master's report that the Perrusse mortgage had not been collected but that the defendant had made advances against it and used the money so advanced in paying the debts of the plaintiff's firm. How much had been so advanced did not appear.

Had there been originally two agreements, one between the plaintiff's firm and the defendant relating to the $250, and the other between the plaintiff and the defendant relating to the Perrusse mortgage, the result of this release would have been to leave the defendant liable to the firm for misapplication of the $250. The release would have operated to make the $250 the money of the firm as between the plaintiff and the defendant,

although it would remain the money of the plaintiff as between the plaintiff and his partners.

But we find on the facts stated in the master's report that the defendant made but one agreement, and that the one agreement was an agreement with the plaintiff. It is manifest that there was but one transaction, and it is equally manifest that one accounting only was within the contemplation of the parties. So far as that agreement related to firm property it was made by the plaintiff as trustee for the firm. In such a case the action must be brought in the name of the trustee. *Boyden* v. *Hill*, 198 Mass. 477.

Where exceptions to a master's report raise questions depending on inferences of fact to be drawn from the facts found by the master, it is for the court which has to deal with those exceptions to draw such inferences of fact. *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182.

*Decree affirmed.*