ALFRED QUIMBY & others *vs.* GILBERT A. TAPLEY & another.

Suffolk.  March 16, 1909. — June 24, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Equity Pleading and Practice,* Objections to master's report, Exceptions to master's report. *Rules of Court,* Equity Rule 31. *Trust,* Powers of trustee. *Voluntary Association.*

Where in a suit in equity no special order of the court has been made, exceptions to a master's report which are founded on objections filed with the master more than five days after a notice, given by him to the parties or counsel under Equity Rule 31, that he had finally settled the draft of his report, should be dismissed.

In a suit in equity for an accounting, it appeared that the defendants were trustees of a voluntary unincorporated association of which the plaintiffs were

members, and as such trustees were in possession of certain land and funds, that the purpose of the association as stated in its by-laws was " managing and improving certain lands and buildings located in Scituate ; " that the association grew out of a reorganization of a former association, and among the property conveyed to the new organization at the time of the reorganization was certain hotel property upon which the defendants subsequently expended money which the plaintiffs contended was expended wrongly because the former association had obtained possession of the property through receiving a mortgage of it to secure a loan of money advanced to the mortgagor, and subsequently receiving from the mortgagor a release of the equity of redemption, acts which, the plaintiffs contended, were outside of the former association's by-laws. It appeared that the mortgagor, before mortgaging it, had purchased the property from the former association. *Held*, that it was immaterial whether or not the former association acted within its powers in acquiring the property in question, since it was properly property of the new organization, and therefore was property which the defendants under the by-laws were to manage and improve, and upon which therefore they could expend money of the association.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on January 20, 1905, for an accounting, as stated in the opinion.

The case was referred to James D. Colt, Esquire, as master. Exceptions to his report were overruled and the bill was dismissed by *Rugg*, J. The plaintiffs appealed.

*V. J. Loring*, (*J. P. Sylvia, Jr.*, with him,) for the plaintiffs.

*W. H. Niles*, (*E. S. Underwood* with him,) for the defendants.

LORING, J. This is a bill in equity brought by three holders of certificates in a voluntary association known as the Fourth Cliff and Humarock Beach Company, and the executors of two deceased certificate holders, in behalf of themselves and all other holders of certificates who should thereafter join therein, against two trustees of the company for an account of their receipts and expenditures while trustees.

The two trustees were Gilbert A. Tapley and Nahum T. Greenwood. Tapley became a trustee on January 19, 1888, and Greenwood on March 18, 1895.

1. The objections on which the exceptions taken by the plaintiffs were founded were not filed within five days after notice given by the master as provided by the thirty-first chancery rule, and no special order has been made by the court allowing them. They should have been dismissed, not overruled.

2. The remaining question is whether on the facts found by the master with such inferences as can be made from those facts

by the court (see *French* v. *Hall*, 198 Mass. 147 ; *Rosenberg* v. *Schraer*, 200 Mass. 218), the bill should be dismissed.

The sole contention of the plaintiffs is that all sums received and expended by the trustees on a certain hotel were outside the purposes for which the association was organized.

The voluntary association here in question was the reorganization of a former company. This reorganization was made at a meeting of the old company on the same day that the defendant Tapley was made a trustee, January 19, 1888.

The by-laws of the new company provided that the purpose of it was "managing and improving certain lands and buildings located in Scituate." "The land purchased by this association shall be held in trust by three trustees who shall act under the instructions of a majority in interest of said company as expressed by their votes at any meeting duly called and holden."

The master found that "when Gilbert A. Tapley became trustee there came into his hands the land originally conveyed to the company, — with the exception of the many lots sold during the first two or three years of its existence, — the hotel, an old farmhouse, a bowling alley, a skating rink, a stable, and the bridge to the main land."

The ground for the plaintiffs' contention that this hotel was outside the purposes for which the company's money could be spent is this : The master found that the hotel was built by one Hamblin in 1882, on land then owned by him. That the deed by which the land of the new company was conveyed to its trustees in 1890 was the same as that by which the land of the old company was conveyed to its trustees in 1882. Their argument is that this land never was conveyed to the trustees of the new company and so was not a part of the property of the company on which money could be expended by its trustees.

The exact terms of the two trust deeds are not set forth in the master's report, nor does the report contain a description of the land on which the hotel was built. But it is there stated that the land on which Hamblin built the hotel was "purchased by him from the company." If it was, it must have been contained in the original deed of 1882 to the trustees of the old company. It was found by the master that the deed of 1890 covered "the property originally conveyed to the company in

1882, with the exception of sixty-one lots that had been sold in the meantime." If the hotel stood in the name of the trustees of the old company in 1890 (the date of the deed from the trustees of the old company to the trustees of the new company), it passed to the trustees of the new company unless it was included in the sixty-one lots mentioned above. It is plain that the title to the hotel stood in the trustees of the old company at that time. Hamblin mortgaged the hotel to the trustees of the old company on November 1, 1882, and released the equity to them on April 26, 1884; and the master found, "in this manner the hotel property was acquired by the company," meaning the old company. We infer that the land on which the hotel stood was not among the sixty-one lots found in the deed to the trustees in 1882 but not in the deed of 1890, because the master found that the hotel was included in the property which came into the defendant Tapley's hands when he became trustee.

The difficulty with the plaintiffs' argument is that they start by showing that the original mortgage loan by the old company to Hamblin to enable him to build the hotel was beyond the powers of the old company and so was beyond the powers of the new company. Whether this mortgage loan was beyond the powers of the old company or not is of no consequence. It does not appear how the old company was reorganized and the new company created. This suit is by certificate holders in the new company. We infer that the hotel was a part of the property of the new company, and under its by-laws the new company was to manage and improve all its property.

As we have said, the exceptions to the master's report should have been dismissed in place of being overruled, and the decree dismissing the bill should be modified accordingly. The defendants are entitled to their costs in this court. So modified the decree is

*Affirmed.*