RESPRO, INC. *vs.* WORCESTER BACKING CO.

Worcester.   January 10, 1935. — July 15, 1935.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Jurisdiction. Patent. Contract,* Validity. *Equity Pleading and Practice, Master:* exceptions to report, report of evidence. *Words, "Saturating."*

A State court of equity has jurisdiction of a suit to enforce a contract incidentally involving the construction of a patent.

A contract made in settlement of an honest controversy, wherein a license to manufacture under a patent was terminated, and the former licensee admitted the validity of the patent and promised not to contest or to infringe it, was valid and enforceable.

After the filing of a master's report with objections annexed, a motion by the objecting party to strike out certain of the master's findings was in the nature of additional exceptions, which under Rule 90 of the Superior Court (1932) cannot be filed without special order of the court.

The adequacy of a summary of evidence made by a master under Rule 90 of the Superior Court (1932) cannot be questioned by "objection," but only by motion to recommit supported by affidavit under Rule 46.

A patent for a process of making a leather substitute, including "saturating the fabric with a binding agent," was infringed by a process in which the fabric was impregnated with the binding agent sufficiently for the purpose, though not to the point of saturation.

BILL IN EQUITY, filed in the Superior Court on July 7, 1934.

After reference to and report by a master, the suit was heard by *Williams,* J., by whose order were entered an interlocutory decree confirming the master's report, and a final decree restraining the defendant from infringement of the plaintiff's patent and assessing the plaintiff's damages in the sum of $526.85.  The defendant appealed from both decrees.

*S. A. Seder,* (*H. Seder* with him,) for the defendant.

*W. C. Waring, Jr.,* (*B. B. Gilman* & *E. A. Kingman* with him,) for the plaintiff.

LUMMUS, J. The plaintiff, a Rhode Island corporation, claims to be the owner of certain letters patent of the United States, of which the chief is a process patent for making impregnated napped woven fabric material, used as a leather substitute. On March 31, 1933, the plaintiff granted the defendant a license to manufacture under the patents, and the defendant associated with it in the manufacture another corporation called Elfskin Corporation. A controversy between the parties was ended by a written agreement dated June 15, 1934, and executed by the plaintiff as the party of the first part, and by the defendant and Elfskin Corporation as the parties of the second part, by which the license was terminated. Two of the paragraphs of this agreement were as follows:

"2. The parties of the second part severally acknowledge each of said patents to be good and valid and severally agree not to contest their validity, directly or indirectly, nor to assist in any way any corporation, firm, partnership or individual in any act, operation or undertaking which may result in infringement of said patents or any of them.

"3. The parties of the second part for themselves and their respective successors and assigns, severally agree that they will not, during the life of said patents or any extensions, reissues or renewals thereof, manufacture or sell or aid in the manufacture or sale of any materials or products falling within the scope of said patents, or any extensions, reissues or renewals thereof; provided, however, that if any claim or claims of said patents are held invalid by a final decree of a district court of the United States unappealed from or a final decree of a circuit court of appeals of the United States from which no application for writ of certiorari to the United States Supreme Court is made and granted, or a final decree of the United States Supreme Court, then and thereupon the parties of the second part shall be released from their obligation under this paragraph with respect to products falling within the scope of such claim or claims and not falling within the scope of a claim or claims which has not thus been held invalid. The parties of the second part further agree that, without affecting any right to damages

which may accrue to RESPRO by reason of the breach by either of the parties of the second part of the provisions of this paragraph, such provision may be enforced by application to any State or Federal Court of competent jurisdiction for an injunction to restrain such breach."

On July 7, 1934, the plaintiff filed a bill in equity in the Superior Court, setting forth the agreement of June 15, 1934, alleging that since that date the defendant has manufactured and sold products falling within the scope of the patents, and praying for an injunction and damages. The defendant answered that it "admits that it made products of a kind and type which would seem to be within the scope of what the plaintiff alleges and claims to be a valid patent," but asserts that the patent is invalid.

Claim 1 of the chief patent in question, number 1,411,376, dated April 4, 1922, sufficiently states the nature of the alleged invention, as follows: "The herein described process of making a leather substitute consisting in treating a woven fabric in a napping machine to produce a loose fiber surface on the fabric, saturating the fabric with a binding agent, subjecting to pressure, drying the sheet and pressing under tension." The master finds that processes for the manufacture of artificial leather and leather substitutes out of napped fabrics and other materials had long been in use prior to 1922, and that each of the several steps described in the patent had been used prior to 1922. He finds, however, that the combination of these steps, claimed in the patent, was new. See *Respro, Inc.* v. *Vulcan Proofing Co.* 1 Fed. Sup. 45, 52; *Expanded Metal Co.* v. *Bradford,* 214 U. S. 366; *Concrete Appliances Co.* v. *Gomery,* 269 U. S. 177.

The defendant contends that the word "saturating" in the patent claim means completely soaking or impregnating the fabric with the binding agent, to the point of inability to hold any more, and that its own process does not come under the patent claim because it does not saturate the fabric in that sense or to that extent. The master finds, however, that the word "saturating" in the patent claim means only "an impregnation sufficient to produce a fabric with the qualities described in the specifications," that the

defendant saturates its fabric in that sense, and that its fabric as made after June 15, 1934, falls within the scope of the patent.

The Federal courts have exclusive jurisdiction "Of all cases arising under the patent-right, or copyright laws of the United States." The Judicial Code, approved March 3, 1911, c. 231, § 256, Fifth. 36 U. S. Sts. at Large, 1161. U. S. Code, Title 28, § 371, Fifth. *LaChapelle* v. *United Shoe Machinery Corp.* 272 Mass. 465, 470. But the fact that a case incidentally involves the patent laws does not make it a case "arising under the patent-right . . . laws." "There is a clear distinction between a case and a question arising under the patent laws." *Pratt* v. *Paris Gas Light & Coke Co.* 168 U. S. 255, 259. A patent-right "consists only in the right to exclude others from making, using, or vending the thing patented without the permission of the patentee." *United Shoe Machinery Corp.* v. *United States*, 258 U. S. 451, 463. Sometimes this has been spoken of as a "monopoly." *Opinion of the Justices*, 193 Mass. 605, 609, 610, 612. Where the jurisdiction of a State court is founded, not on a patent-right, but upon a contract (*LaChapelle* v. *United Shoe Machinery Corp.* 272 Mass. 465; *Lowry* v. *Hert*, 290 Fed. Rep. 876) or a tort (*Aronson* v. *Orlov*, 228 Mass. 1), the jurisdiction is not defeated merely because the existence, validity or construction of a patent may be involved. In *Pratt* v. *Paris Gas Light & Coke Co.* 168 U. S. 255, 259, Brown, J., said, "To constitute . . . [a case arising under the patent right laws] the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws." See also *Henry* v. *A. B. Dick Co.* 224 U. S. 1, 16; *Fair* v. *Kohler Die & Specialty Co.* 228 U. S. 22, *Odell* v. *F. C. Farnsworth Co.* 250 U. S. 501, 503. As to the latter branch of the rule, added somewhat doubtfully in the passage quoted, compare *LaChapelle* v. *United Shoe Machinery Corp.* 272 Mass. 465, 474.

The present suit is based, not on a patent, but on a contract. By its contract the defendant agreed not to manufacture any "materials or products falling within the scope

of said patents," without regard to the validity of the patents unless their invalidity should be determined by a final judicial decree of a sort which has not yet been entered.   It agreed, upon valuable consideration, not to contest their validity.   In *Pope Manuf. Co.* v. *Gormully*, 144 U. S. 224, 236, the court refused to enforce specifically the contractual obligation of a licensee not to deny the validity of a patent nor to deal in goods falling within its claims, even after the expiration of the license, declaring the contract "unusual and oppressive."   In that case the contract was made at the time the license was granted, and was found to be (page 237) "an artfully contrived snare to bind the defendant in a manner which he did not comprehend at the time he became a party to it." In the present case the contract was apparently a fair settlement, at the time of the revocation of a license, of an honest controversy.   Under some circumstances an estoppel to deny the validity of a patent is recognized. *International Burr Corp.* v. *Wood Grinding Service, Inc.* 34 Fed. Rep. (2d) 905, 907.   *National Clay Products Co.* v. *Heath Unit Tile Co.* 40 Fed. Rep. (2d) 617, 618.   Moreover, a contract, even after a license has ended, to respect the validity of a patent and not to infringe its claims, has been held valid.   *Philadelphia Creamery Supply Co. Ltd.* v. *Davis & Rankin Building & Manuf. Co.* 77 Fed. Rep. 879. *American Specialty Stamping Co.* v. *New England Enameling Co.* 178 Fed. Rep. 106.   *H. D. Smith & Co.* v. *Southington Manuf. Co.* 247 Fed. Rep. 342.   *Billings* v. *Ames*, 32 Mo. 265.   The cases are discussed in *Eskimo Pie Corp.* v. *National Ice Cream Co.* 20 Fed. Rep. (2d) 1003, affirmed 26 Fed. Rep. (2d) 901.   We need not consider whether a State court would have jurisdiction of an action on a contract which did not broaden the rights created by the patent law itself, but merely added a contractual obligation to the statutory one.   See *Henry* v. *A. B. Dick Co.* 224 U. S. 1, 14.   The present case is within the jurisdiction of the State courts.

The master's report was filed on September 26, 1934, and to it were appended fifty-seven objections brought in

by the defendant, as provided by Rule 90 of the Superior Court (1932). By force of that rule, these objections became "exceptions." *O'Brien* v. *Keefe*, 175 Mass. 274, 276. The rule provides that "no additional exceptions may be filed without a special order of the court." On October 2, 1934, the defendant filed a motion to strike out twelve specified findings made in the master's report. Such a motion was in the nature of exceptions, and violated the rule. It might well have been dismissed, instead of being overruled. *Quimby* v. *Tapley*, 202 Mass. 601, 602. *Pearson* v. *Mulloney*, 289 Mass. 508, 513–514. It gave the defendant no rights.

As to some of the objections, the defendant requested the master to "append to his report, for the sole purpose of. enabling the court to determine" questions of law, raised by objection which depend on evidence not reported by the master in his draft report, "a brief, accurate and fair summary of so much of the evidence as shall be necessary for such purpose." Rule 90 of the Superior Court (1932). The master appended what purported to be a compliance with the request. If the defendant was not satisfied, it should have followed the practice outlined in *Pearson* v. *Mulloney*, 289 Mass. 508, 512–513. This it did not do. The "objections to master's report of the evidence in accordance with requests of the defendants," brought in, apparently to the master, on September 20, 1934, and appended to the report, do not help the defendant, for the inadequacy of the summary and the harm to the defendant are not demonstrated on the face of the report, even with the summary of evidence added, so as to be reached and corrected by objection and the consequent implied exception. The very point of the defendant is that the report, as supplemented by the summary, remained insufficient to present the questions of law. It is elementary that exceptions to a master's report do not reach errors not manifest on the face of the report. *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151, 155.

The exceptions which result from objections duly brought in and appended to the report remain to be considered.

We think that the master was right in his construction of
the word "saturating." We see nothing to the contrary
in *Smith* v. *Snow,* 294 U. S. 1. Without discussing the
exceptions in detail, we think that they were properly
overruled, and that the master's report was properly con-
firmed. The language of the final decree has not been the
subject of adverse criticism in any respect not covered by
this opinion.

*Interlocutory decrees affirmed.*

*Final decree affirmed, with costs.*