* After the argument, the action stood continued nisi for advisement; and at the following March term in Suffolk, the opinion of the Court was delivered as follows, by
Sedgwick J.
This is a dispute between two honest men, both claiming to derive a title to the land in controversy from Calvin Metcalf, which, it is agreed, once, and until a title vested in one of the parties in controversy, belonged to him. These parties are Fairbanks, the demandant, and James Adams, who is admitted by consent to defend the action.
The demandant claims under the levy of an execution, regularly made on the land in controversy; which was attached on the 12th of January, 1810, at 8 o’clock in the evening. Adams claims under an absolute deed in fee simple of the same land, duly acknowledged and recorded on the same day; which deed was received by the register at half past 9 o’clock in the morning.
As the title under the deed was completed previous to the attachment, it must be effectual, provided the deed was a good deed, valid as against the creditors of Metcalf; and, on the contrary, if that deed is fraudulent, the demandant is entitled to recover.
The deed was made and dated in March, 1806. At that time Metcalf was indebted to Adapts, who was also surety to several of Metcalf’s creditors for his debts; and it was intended that the deed, although absolute in form, should operate as a security for the debts due to Adams, and for his responsibilities for Metcalf. For this purpose it was to be put into the hands of a third person, to be kept by him until an adjustment should be made, and a bond of defeasance executed by Adams; or until further directions should be given by the parties. In pursuance of this agreement the deed was made, and in form delivered to Adams; but immediately afterwards, according to the understanding and agreement of the parties, it was placed in the hands of Woodward, one of the subscribing witnesses *201 So the business continued until the 11th of January, 1810, * when a final adjustment between Adams and Metcalf was made; on which it appeared that Adams had paid, and was liable to pay, for Metcalf, a sum more than the value of the land conveyed. At that time the deed was redelivered by Woodward to Metcalf, by him delivered to Adams, and on the next day acknowledged and registered, as has been mentioned.
By the attachment referred to in the report of the judge, it appears that the debt due to the demandant was an existing debt at the time of making the deed; and if Adams can avail himself of nothing but what then took place, if the delivery of the deed was absolute, and if what has since taken place has not given validity to the deed, it is manifest that it must be considered as fraudulent and void, as against the extent of the demandant’s execution; because Metcalf continued in possession; because there was a trust and confidence between the parties; and because it was intended that the deed should operate differently from its import—that it should be conditional, and not absolute.
On the part of the demandant it is contended, that the delivery in 1806 was absolute, being made to the grantee; — and on the part of Adams, that that delivery was controlled by the manifest intent of the parties, and that the deed was, accordingly, then delivered as an escrow.
That the delivery of a deed should operate as an escrow, it is necessary that it should be made to a stranger, and not to the party ; for if one make a deed, and deliver it to the party to whom it is made, as an escrow upon certain conditions, in such case, let the form of the words be whatever it may, the delivery is absolute, and the deed shall take effect presently as his deed ; and the party to whom it is delivered, is not bound to perform the condition; for in traditionibus chartarum, non quad dictum, sed quad factum est, inspicitur.
The question then is, whether, from the facts appearing in this case, the delivery of the deed in 1806 was made to Woodward or to Adams. If to the former, it was an escrow; — * if to the latter, it was absolute, and the deed then took effect.
There can be no doubt what the intention of the parties was. It was their intention and agreement that the deed should operate as an escrow. The deed was not at that time to become absolute. It was not then to go into the possession of Adams. But, on the contrary, it was to be placed in the hands of a third person, by him to" be kept until an adjustment should be made between the parties, and a defeasance executed by Adams, or until further directions *202 should be given by the parties. When, however, Metcalf sealed it, he delivered it into the hands of Adams; but it was immediately afterwards, in conformity to the understanding and agreement of the parties, placed in possession of Woodward. Now, the plain sense and justice of the case requires that the deed, while in the hands of Adams, should be considered as in transitu to the possession of Woodward, — as much so as if words to that effect had been pronounced by Metcalf at the time. The agreement had been previously made, and subsequently the delivery in conformity to it; and I think that, according to the facts, Adams is to be considered as merely the instrument or agent of Metcalf, to deliver the deed to Woodward, according to the intention and agreement of the parties, as an escrow.
One of the requisites to constitute a deed is the delivery. If the delivery of this deed in 1806 was merely as an escrow, as the conditions on which it was delivered were never performed, it was of no more force, than if Metcalf had made it, and had never delivered it at all. The consequence of this is, that when it was, in 1810, redelivered by Woodward to Metcalf, it was precisely as it would have been, if Metcalf had always retained it in his possession. It had no validity. It was competent to him to destroy it; or he might do what he did, — deliver it; and in that case, like other deeds, it took effect from its delivery. And as the jury have found that the deed was made bona fide, and for a valuable and adequate consideration, (and indeed * there does not appear to have been any evidence from which the jury could have drawn a different conclusion,) the consequence is, that by the acknowledgment and registry of the deed, previous to the attachment by the demandant’s writ, the title of Adams to the demanded premises is proved.
There is no doubt that, in this commonwealth, the delivery of a registered deed, subsequent to the date of it, may be proved, whenever the facts will authorize, and the justice of the case requires it. The authorities in England which have gone on the principle that, in the case of an enrolled deed of bargain and sale, the parties should not be permitted to show that the delivery was on a day subsequent to the date, were influenced from the wording of thg statute of enrolments, which requires that the deed should be enrolled within six months from the date.

Judgment on the verdict.