HARVARD ELECTRIC & MACHINE CO., INC. *vs.* G & K
PROVISION COMPANY
(and a companion case[1]).

Suffolk.    January 4, 1956. — March 7, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Contract*, Parties, Novation, What constitutes, Implied contract, Building contract.

A finding of a novation whereby a corporation was replaced by another corporation, in the same business and with two of its officers, directors and stockholders the same, as party to an oral contract with a builder

───────────

[1] The companion case is by Abraham Ginsberg and others against the same defendant.

333 Mass. 678 679

Harvard Electric & Machine Co. Inc. *v.* G & K Provision Co.

for the remodeling of certain premises on a cost plus basis was not required by evidence that after the start of the work and before the second corporation was incorporated there was a discussion between such officers and the builder with respect to substitution of a written contract, which was later drawn but never executed, naming the builder and the second corporation as parties and stipulating a contract price, that the builder in such discussion insisted that he was doing the work for the first corporation and would look to it for payment and only agreed to the drawing of the written contract on the understanding that the first corporation "would pay the bill," and that the builder submitted his bill for the completed work addressed to the second corporation at the remodeled premises and accepted its checks in part payment; and the first corporation might properly be found liable to the builder for the unpaid balance. [682–683]

A finding for the plaintiff was not warranted in an action for electrical work and materials furnished at certain premises where the plaintiff's claim to a contract with the defendant was that following the making of a contract between the defendant and a general contractor for a remodeling of the premises, including the electrical work, for which the general contractor obtained a price from the plaintiff on the defendant's recommendation, the plaintiff had been substituted for the general contractor with respect to the electrical work by agreement of the defendant, but, although there was evidence that after the general contractor had started work he, the defendant and the plaintiff agreed to an elimination of the electrical work from the general contract and the defendant was left free to contract for it with the plaintiff, there was no evidence that the defendant did so. [683]

Two ACTIONS OF CONTRACT. Writs in the Municipal Court of the City of Boston dated December 13, 1951, and March 3, 1952, respectively.

The actions were heard by *Riley, J.*

*Robert Robinson, (Alan J. Dimond* with him,) for the plaintiff Harvard Electric & Machine Co., Inc.

*Harold Brown,* for the defendant.

*William Kopans,* for the plaintiffs Abraham Ginsberg and others.

WILLIAMS, J. These are two actions of contract, tried together in the Municipal Court of the City of Boston, to recover for labor and materials furnished to the defendant at premises numbered 2 Union Street, Boston. The plaintiffs are Harvard Electric & Machine Co., Inc., a corporation, hereinafter called Harvard, and Abraham Ginsberg and others, copartners doing business as I. Ginsberg and Sons, hereinafter called Ginsberg. The defendant in each

case is G & K Provision Company, a corporation, herein-after referred to as G & K. There was evidence that G & K, which was in the meat business at 80 Blackstone Street, Boston, intended to sublease the premises at 2 Union Street for an additional place of business. In December, 1950, or shortly thereafter Joseph Goldstein and Israel Krasnow, who were officers, directors, and stockholders of that cor-poration, met with Benjamin Ginsberg, one of the Ginsberg partners, and discussed the nature of the proposed necessary alterations and remodeling. They agreed that Ginsberg should do the work on a cost plus basis. As part of the work was electrical, Goldstein and Krasnow recommended Harvard for this part of the work. Ginsberg obtained from Harvard a figure of $500 and so informed Goldstein and Krasnow. Ginsberg, who appears to have been the general contractor, started work on January 15, 1951. About Jan-uary 28 or 29 Goldstein and Krasnow told Ginsberg that they wanted a contract price for the work rather than leave it on a cost plus basis and suggested a written contract. They said that they wanted the contract to be made with Adams Beef Co., Inc., a Massachusetts corporation. Gins-berg objected, saying that he was not going to look for his money from anybody but G & K, that he knew them and was extending credit to them and looking to them for pay-ment. Goldstein and Krasnow said that Ginsberg was do-ing business with G & K and that the company would pay the bill. Ginsberg then agreed that the written contract be drawn in the name of Adams Beef Co., Inc., "so long as they all understood that, in fact, the work was being done for the G & K Provision Company as originally agreed, and that G & K Provision would pay the bill." The written contract was then drawn naming Adams Beef Co., Inc., and Ginsberg as parties but was never executed.

At a conference of Benjamin Ginsberg, Goldstein, Kras-now, and Mark Friedman of Harvard held a few days be-fore February 20 Ginsberg suggested that the electrical work be taken out of his contract and that he would credit G & K with $500. All parties present agreed. On February 20

Friedman applied to the city of Boston for a work permit inserting the name of Adams Beef company by the direction of either Goldstein or Krasnow. Friedman knew nothing of the Adams Beef company, which had been incorporated on February 1 to engage in the meat business. Ginsberg performed all of the work originally contracted for together with a number of extras which, after crediting G & K with $500 for the omitted electrical work, amounted to $6,400. Payments totaling $5,200 were paid Ginsberg by checks of Adams Beef company, leaving a balance due Ginsberg of $1,200. Adams Beef company conducted its business at 2 Union Street under a lease which commenced on the day of its incorporation. Goldstein and Krasnow were officers, directors, and stockholders of both G & K and the Adams company, "but there was a third officer, director and stockholder in the Adams Beef Co., Inc., who had no interest in G & K." The only bill submitted by Ginsberg was addressed to Adams Beef company, 2 Union Street, Boston.

Ginsberg's substitute declaration alleged an oral contract entered into with G & K on or about January 29, 1951, for labor and materials in the construction of a store at 2 Union Street at a total price of $4,400 with extras subsequently ordered for an agreed price of $2,500, the balance claimed to be due being $1,700. Harvard declared in two counts for labor and materials with accounts annexed. In the first count $417.20 was alleged to be due and in the second $580.87. All items for labor in the accounts annexed were dated on and after February 20 except two items which were dated February 19. The answer of G & K in each case consisted of a general denial, payment, "and a special plea of ultra vires of the corporate powers of the defendant."

The judge found for Ginsberg in the amount of $1,200 and for Harvard "on both counts" of its declaration. Identical requests for rulings were presented by the defendant in each case. Each case was reported to the Appellate Division on the rulings made by the judge on the following requests: "11. There is not sufficient evidence to warrant a finding for the plaintiff. Ruling of the court: Denied. 12.

There is no evidence to warrant a finding for the plaintiff. Ruling of the court: Denied. . . . 14. The evidence requires a finding for the defendant. Ruling of the court. Denied. 15. On all the law in this case the court is warranted in finding for the defendant. Ruling of the court: Denied (not the law alone). 16. On all the law in this case the court should find for the defendant. Ruling of the court: Denied (not the law alone). 17. The contract for work and labor done and materials furnished by the plaintiff at 2 Union Street, Boston, is ultra vires as to corporate powers of the defendant corporation and the defendant corporation is not legally obligated to pay for same. Ruling of the court: Denied." In the Ginsberg case the Appellate Division dismissed the report and the defendant appealed. In the Harvard case the Appellate Division reversed the ruling on request numbered 17 and ordered a finding to be entered for the defendant. From this decision the plaintiff appealed.

The evidence which we have recited is contained in the report of the trial judge to the Appellate Division and is stated to be all the evidence material to the questions reported. No question appears to have been raised as to the authority of Goldstein and Krasnow to act for G & K, to the authority of Benjamin Ginsberg to act for his firm, and to the authority of Friedman to act for Harvard.

There was no error in the rulings of the judge upon the defendant's requests in the Ginsberg case. He could find that G & K contracted with Ginsberg to remodel the premises at 2 Union Street; that it promised to pay them for the work; that the work was performed; and that G & K owed Ginsberg the unpaid balance of the stipulated price. The evidence of the later discussion by the parties concerning the insertion of the name Adams Beef Co., Inc., in a written contract, of the submission to it of a bill for the work performed, and of the acceptance by Ginsberg of its checks did not require the finding of a novation. "There is no novation until the creditor accepts the new debtor in full substitution for the former one and thus completely re-

leases the old debt." *Tudor Press, Inc.* v. *University Distributing Co.* 292 Mass. 339, 341. There was other evidence that Ginsberg expressed his intention to hold G & K to its original contract and to look to it for payment. This contract was made before Adams Beef company was in existence and plainly could not be ruled to have been ultra vires G & K.

In the Harvard case there is a complete lack of evidence as to any express contract between Harvard and G & K and as to any work performed by Harvard for G & K for which an agreement to pay could be implied. Harvard's contention that it had been substituted for Ginsberg by agreement with G & K is not supported by the evidence. All that appears is that by elimination of the electrical work from the Ginsberg contract, G & K was left free to contract for it with Harvard. There was no evidence that it did so. The appeal by Harvard brings here for review all the rulings of law made by the trial judge which were reported by him to the Appellate Division. *Barry* v. *Sparks,* 306 Mass. 80, 85. We think that there was error in refusing to grant the defendant's requests numbered 11 and 12. It is unnecessary to consider the correctness of the ruling on request numbered 17 as in the absence of evidence of a contract no question of ultra vires arises.

*Order of the Appellate Division*
*affirmed in each case.*