MARIA A. MEDEIROS vs. GILBERT MEDEIROS & others.

Bristol. January 18, 1974. — March 25, 1974.

Present: HALE, C.J., ROSE, GOODMAN, GRANT, & ARMSTRONG, JJ.

Contract, Parties, Novation. Trust, What constitutes. Tenants by the Entirety. Deed, Validity.

Where it appeared that the grantees in a conveyance of real estate agreed to pay the grantor a certain amount therefor, that subsequently the grantees, desiring to terminate such obligation of theirs, and with the assent of the grantor, conveyed the property to grantees who executed a "Declaration of Trust" reciting the agreement of the original grantees, their desire to terminate it, and the assent of the original grantor, and stating that the later grantees were indebted to the original grantor in the same amount as the original grantees had agreed to pay, there was a novation, but no trust was created. [86-87]

A conveyance of real estate in 1963 to husband and wife as joint tenants created in the grantees a tenancy by the entirety, which could not be severed by a deed given by only one of them. [87-88]

A deed of real estate never delivered or recorded was of no effect. [88]

BILL IN EQUITY filed in the Superior Court on July 16, 1971.

The suit was heard by *Frank E. Smith*, J., on a master's report.

*Donald J. Fleming* for the plaintiff.

*David Entin* (*Jeffrey S. Entin* with him) for the defendant.

HALE, C.J. This is a bill in equity which was subsequently amended so as to conform to the requirements of a bill for declaratory relief pursuant to the provisions of G. L. c. 231A. In her bill the plaintiff (Maria) in effect sought rescission of two deeds conveying a certain parcel of real estate located in Fall River, and a determination of the rights of the parties as set out in a docu-

ment entitled "Declaration of Trust" executed by two of the defendants (Gilbert and Jacqueline) for the benefit of Maria. The matter was referred to a master who made findings of fact and submitted a report. Maria appealed from the denial of her motions to recommit and for a new trial, from an interlocutory decree which overruled her exceptions to the report and confirmed the same, and from a final decree which established the defendant Jacqueline's undivided one-half interest in the premises and Jacqueline's indebtedness to Maria in the sum of $1,878.44.

As the evidence in this case is not reported, we accept as final those facts found by the master which are not inconsistent, contradictory, or plainly wrong. *New England Overall Co.* v. *Woltmann,* 343 Mass. 69, 74-75 (1961). We disregard rulings of law made by him. *Sprague* v. *Rust Master Chemical Corp.* 320 Mass. 668, 675-677 (1947).

We summarize the facts found. On June 15, 1963, Maria conveyed the premises to her daughter and son-in-law (the Costas), reserving to herself a rent free life estate in the first floor of the premises. The Costas agreed to pay Maria $6,000, to be paid without interest in equal monthly installments of $50 over a ten-year period. No acceleration or default provisions were included in the agreement. It was found that Maria was "desirous of relinquishing the responsibility attendant upon owning the real estate and of having a member of her family residing in the second floor tenement. . . ."

In November of 1963 the Costas, who had made no payments under the agreement, indicated that they no longer wished to assume the responsibility undertaken as a result of the conveyance to them. After consultation with Maria and with Gilbert and Jacqueline (Maria's son and daughter-in-law, respectively), the Costas executed and delivered a deed conveying the premises (subject to Maria's life estate) to Gilbert and Jacqueline as joint tenants. At this time, Gilbert and Jacqueline executed a

"Declaration of Trust." That document recited that the Costas had agreed to pay Maria $6,000, that the Costas desired to terminate such agreement, that Maria assented to such termination, and that Gilbert and Jacqueline stood indebted to Maria in the sum of $6,000. Gilbert and Jacqueline agreed to satisfy that indebtedness by paying Maria $50 per month for ten years, without interest. Gilbert agreed to open a trust account at a certain credit union (in the name of Maria, as trustee for Gilbert) and to deposit the monthly payments in that account.[1] No provision for acceleration or default was contained in the document. No payments were made at the time of the conveyance and the execution of that document.

On April 18, 1964, Gilbert and Jacqueline opened an account at the credit union in the name of Maria. On January 1, 1971, the balance in that account was $1673.33; Gilbert and Jacqueline had made deposits therein totaling $1615.33.

Gilbert and Jacqueline subsequently encountered marital difficulties, and Jacqueline obtained an order against Gilbert for separate support. She continued to reside at the premises in Fall River. In 1971 Gilbert apparently executed a deed to Maria of "all his right, title and interest" in the premises. The deed was not recorded; the master made no finding that the deed was ever delivered.

1. In her bill Maria asked for a declaration of the rights of the parties to the "Declaration of Trust." It seems clear to us, as it did to the master and to the court below, that this instrument cannot be construed as a trust instrument. The language of the instrument and the conduct of the parties indicate that there was no manifestation of a present intention to create a trust when the instrument was executed. Furthermore, there was no trust res in existence at the time of execution. For those

---

[1] The document also contained certain other provisions which are not here material.

reasons, no valid trust was created. *Bennett* v. *Little-field,* 177 Mass. 294, 300 (1901). *New England Trust Co.* v. *Sanger,* 337 Mass. 342, 348 (1958). Scott, Trusts (3d ed.) §§ 2.6, 26, 74. Restatement 2d: Trusts, §§ 2(k), 26, 74.

A reasonable interpretation of this inartfully drafted document is that it is a covenant under seal which sets forth the manner by which Gilbert and Jacqueline were to satisfy the obligation to pay Maria $6,000 which they assumed when they accepted the deed to the premises. In the circumstances of this case, this transaction amounted to a novation. Gilbert and Jacqueline agreed to assume the pre-existing and legally valid obligation of the Costas; Maria, expressly and by her conduct, assented thereto and released the Costas from their prior obligation. Thus, the requirements of an effective novation were met. *Caswell* v. *Fellows,* 110 Mass. 52 (1872). *Griffin* v. *Cunningham,* 183 Mass. 505, 508-509 (1903). *Kirtley* v. *C. G. Galbo Co. Inc.* 244 Mass. 179, 182-183 (1923). Williston, Contracts (3d ed.) §§ 1865-1872. Restatement: Contracts, §§ 424, 427. Contrast *Larson* v. *Jeffrey-Nichols Motor Co.* 279 Mass. 362, 365-368 (1932); *Harvard Elec. & Machine Co.* v. *G & K Provision Co.* 333 Mass. 678 (1956). The only parties with rights in or obligations under the "Declaration of Trust" are, therefore, Maria, Gilbert and Jacqueline. These rights and obligations are contractual in nature.

2. The master's finding that Jacqueline was the owner of an undivided one-half interest in the premises (perhaps because of the 1971 deed from Gilbert to Maria), as incorporated in the final decree, was erroneous. The 1963 conveyance from the Costas to Gilbert and Jacqueline as joint tenants operated to create a tenancy by the entirety. *Hoag* v. *Hoag,* 213 Mass. 50, 53-54 (1912).[2] Such a tenancy could not be severed by

---

[2] The amendment to G. L. c. 184, § 7, effected by St. 1973, c. 210, is not here material.

the unilateral act of either of the parties. *Bernatavicius* v. *Bernatavicius,* 259 Mass. 486, 487 (1927). See *Smith* v. *Tipping,* 349 Mass. 590 (1965). Thus, regardless of the effect of the 1971 deed from Gilbert to Maria, Jacqueline's rights as a tenant by the entirety would remain undisturbed.

3. It is our opinion, however, that the purported conveyance by Gilbert to Maria was of no effect. There was no finding that this deed, which was never recorded, was ever delivered. From our examination of the record before us, we cannot properly infer that delivery took place. It is well settled that such delivery is essential to the validity of a deed. *Fairbanks* v. *Metcalf,* 8 Mass. 230, 239 (1811). *Lexington* v. *Ryder,* 296 Mass. 566, 568 (1937).

4. We find no abuse of discretion by the trial judge in denying the motions to recommit and for a new trial. See *Epstein* v. *Epstein,* 287 Mass. 248, 254 (1934); *New England Overall Co.* v. *Woltmann,* 343 Mass. 69, 74-75 (1961).

5. We have examined the record before us, mindful of our duty "to see that a proper final decree is entered on the facts found. . . ." *Sarnow* v. *Sarnow,* 359 Mass. 764 (1971). The interlocutory decree is affirmed. The final decree is reversed, and a new final decree is to be entered declaring the Gilbert and Jacqueline hold title to the premises as tenants by the entirety, subject to Maria's life estate in the first floor of the premises, and that they stand indebted to Maria in the sum of $4,384.67 ($6,000 minus $1,615.33), plus interest on the amounts due and unpaid from July 16, 1971.

*So ordered.*