PEABODY GAS & OIL COMPANY *vs.* STANDARD OIL COMPANY OF NEW YORK.

Essex.   March 8, 1933. — September 13, 1933.

Present: RUGG, C.J., WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Mortgage,* Of personal property. *Equity Jurisdiction,* Plaintiff's clean hands, To enjoin foreclosure of mortgage. *Corporation,* "Corporate cloak." *Fraud. Equity Pleading and Practice,* Master: report.

By reason of the provisions of G. L. (Ter. Ed.) c. 255, § 1, a mortgage of personal property, which was recorded in a city where the mortgagor and corporations which he controlled did business and where most of the chattels concerned were situated, but which was not recorded in a town where the mortgagor resided, was invalid except as to the parties thereto.

Although a mortgage of personal property, given as security for a certain obligation of the mortgagor to the mortgagee, was invalid, except as to the parties thereto, because it was not recorded in the manner required by G. L. (Ter. Ed.) c. 255, § 1, the inference to be drawn from the facts, that the mortgagor thereafter conveyed the mortgaged property to a corporation which he entirely owned and controlled and used as a "corporate cloak" for his own purposes and that the conveyance was fraudulent as to his creditors, including the mortgagee, was that the corporation consciously and knowingly participated in that fraudulent transfer; and it could not maintain a suit in equity against the mortgagee to enjoin the defendant from foreclosing the mortgage: the plaintiff did not come into equity with clean hands touching the matter as to which it sought relief.

A master in a suit in equity should make his findings of fact in narrative, consecutive and brief form; he should not file as his findings a mere statement that, of requests by the parties in writing for findings of fact, he "allowed" those bearing certain numbers and "disallowed" those bearing certain other numbers.

Rulings of law, unless connected with specific objections and exceptions, generally have no place in the report of a master in a suit in equity. Per RUGG, C.J.

BILL IN EQUITY, filed in the Superior Court on December 10, 1931, described in the opinion.

The suit was referred to a master. In his report the master, after making certain findings in narrative form, stated that of the "written request[s] for findings of fact" (filed by each of the parties and included in the record) he "allow[ed]" those bearing certain numbers and "disallow[ed]" those bearing certain other numbers.

Material facts are stated in the opinion. By order of *Whiting*, J., there were entered an interlocutory decree confirming the master's report, and a final decree adjudging the chattel mortgage described in the opinion to be invalid as against the plaintiff and permanently enjoining the defendant from "attempting to foreclose" it. The defendant appealed from the final decree.

*W. D. Regan*, for the defendant.

*W. C. Ford*, for the plaintiff.

RUGG, C.J. The plaintiff by this suit seeks to enjoin the foreclosure of a mortgage given by Henry N. Peabody to the defendant and to have that mortgage declared void as to the plaintiff. The case was referred to a master who has made a comprehensive report of the facts. The evidence is not reported. Therefore the findings of fact must be accepted as final since they are within the scope of the bill and not mutually incompatible or plainly wrong. The facts thus found are that the mortgage was given to the defendant by Peabody to secure a guaranty given by him to the defendant. The property thereby conveyed as security was in part later sold by Peabody to the plaintiff by a bill of sale which referred to "whatever rights the Standard Oil Co. of New York [the defendant] may have gained in consequence of a mortgage given by me [Peabody] to them as guarantor of certain accounts" in its covenant against encumbrances, but which contained a covenant of full warranty "against the lawful claims and demands of all persons." The mortgage was dated on June 5,

1930. It was recorded in the clerk's office of the city of Lawrence on June 10, 1930. No record of it was made in Dracut. The bill of sale was dated January 1, 1931. Peabody on and for a long time before June 5, 1930, resided in the town of Dracut. He and various corporations with which he was connected, in which he was a large, if not the sole, owner of the capital stock and whose affairs he controlled, did business at 15 Broadway, Lawrence. The mortgage did not state his place of residence. The bill of sale described him as "of Dracut." The defendant had no knowledge of his place of residence, but knew that 15 Broadway, Lawrence, was in a business, and not a residential, section of that city. The chattels here material were situated chiefly in Lawrence.

It is required by G. L. (Ter. Ed.) c. 255, § 1, that mortgages of personal property made by a resident of the Commonwealth must be recorded within fifteen days from the date written in them on the records of the town where he resides when the mortgage is made and on the records of the town where he then principally transacts business. Until so recorded it "shall not be valid" against a person other than the parties thereto, and a record made subsequently to the time limited "shall be void." Where record in two places is required, the "time limited" for the second record extends to ten days after the record in the first place if that first record is made within fifteen days of the date written in the mortgage. Notice of the mortgage is of no avail to render it valid against any one except the parties, if, in fact, proper record is not made. It is plain that the mortgage was not recorded as required by the statute because not recorded in Dracut, the town where Peabody lived. *Connecticut Valley Onion Co.* v. *Pielock,* 281 Mass. 287.

The plaintiff is a duly organized corporation. As Albie Burke's Place Inc. it had done business prior to September 6, 1929. Its principal stockholders were Peabody and his son. In September, 1929, it took the name Peabody Gas & Oil Company and its place of business was at 15 Broadway, Lawrence. At the time of bringing the bill there was due to the defendant from Henry N. Peabody and from

the plaintiff the sum of $2,850.06 for merchandise sold and delivered. If Peabody and the defendant were the only parties concerned, the mortgage would be valid, and foreclosure of it could not be restrained.

The defendant is a *bona fide* creditor of Henry N. Peabody to a considerable amount. It is seeking to foreclose a mortgage of personal property given by Peabody to it which as between the two would be enforceable notwithstanding the fact that it was not recorded as required by the statute. G. L. (Ter. Ed.) c. 255, § 1. That mortgage covers property subsequently transferred to the plaintiff by Peabody by written instrument "B." That instrument contained this clause: "And I hereby COVENANT with the grantee that I am the lawful owner of the said goods and chattels; that they are free from all incumbrances, except whatever rights the Standard Oil Co. of New York may have gained in consequence of a mortgage given by me to them as guarantor of certain accounts as contained therein." With respect to that transfer from Peabody to the plaintiff the master finds: "No evidence was introduced by either plaintiff or defendant as to the nature or amount of actual consideration moving to Henry N. Peabody from the plaintiff upon this transfer. . . . No notice was given to creditors of Henry N. Peabody of the transfer evidenced by instrument 'B' and said transfer was a fraud against said creditors including the defendant, and was substantially a transfer from Henry N. Peabody individual to a corporation known by the name of Peabody Gas & Oil Company, the beneficial interest in which latter corporation I find was entirely owned and controlled by Henry N. Peabody and used as a corporate cloak for his own purpose." From this finding the inference is irresistible, even if the finding is not itself express, that the plaintiff consciously and knowingly participated in that fraudulent transfer. The plaintiff was entirely owned by Peabody and was used by him as a "corporate cloak" for his own fraudulent purposes. The inference is strong that the defendant by resort to G. L. (Ter. Ed.) c. 109A could have that transfer set aside. The situation is, then, that a fraudulent grantee

of property is seeking the aid of a court of equity to prevent an honest creditor from collecting his debt by foreclosure of a mortgage, good as between the parties, given by the fraudulent grantor of the plaintiff respecting the very property which the plaintiff holds in fraud of all creditors of its vendor including the defendant. A court of equity cannot properly grant that relief.

It was stated in *New York, New Haven & Hartford Railroad* v. *Pierce Coach Lines, Inc.* 281 Mass. 479, at page 482, with ample citation of authorities: "The principle that equity will not interfere in behalf of one who is guilty of illegal or inequitable conduct in the matter with regard to which he seeks its action is well established in our jurisprudence." The conduct of both Peabody and the plaintiff was "illegal or inequitable" in making and accepting transfer of this property in fraud of creditors of Peabody, both of them entertaining a common purpose to defraud those creditors, of whom the defendant was one. The plaintiff does not come into equity with clean hands touching the matter as to which it seeks relief.

The case at bar is distinguishable from cases like *England* v. *Dearborn*, 141 Mass. 590, and *Selden Truck Corp.* v. *Selden Truck Service Co.* 257 Mass. 58, where it was held in substance that the owner of a large part of the stock of a corporation could not bind it without authority duly granted. Although the plaintiff was not a party to the mortgage in a strictly legal sense, it was a party to the fraud which Peabody perpetrated on his creditors of whom the defendant was one by his conveyance to the plaintiff of the property covered by the mortgage to the defendant. Being a party to that fraud the plaintiff is in no position to undertake to enforce the rights which, if free from participation in the fraud, it would be in a position to enforce. By granting to the plaintiff relief a court of equity would be directly aiding it in perpetrating a fraud. It would help the plaintiff to keep property under an instrument which apparently could be set aside under G. L. (Ter. Ed.) c. 109A, which probably, or perhaps, is contrary to G. L. (Ter. Ed.) c. 106, § 1, prohibiting sales in bulk, and which

could not stand under the bankruptcy law. *Putnam* v. *United States Trust Co.* 223 Mass. 199, 204–205. But apart from any statute, equity will not give assistance to a fraudulent vendee seeking to enforce its claims against one of the persons intended to be defrauded. The case at bar is in this particular distinguishable from *O'Gasapian* v. *Danielson, ante,* 27. The maxim that one must come into a court of equity with clean hands in order to secure relief is precisely applicable to the findings of the master. It would be vain to say that the plaintiff is not affected by the fraud of Peabody's conduct when it was "entirely owned and controlled" by him and was used by him as a "corporate cloak" for his own fraudulent purposes.

The form of the master's report is objectionable. A master should make findings of fact in narrative, consecutive and brief form. He should not file as his findings a list of numbers referring to numbered requests for findings of fact filed by the parties. The court is entitled to be saved the labor and the distraction of attention inherent in scattered findings. Rulings of law unless connected with specific objections and exceptions have, generally, no place in a report. *Manfredi* v. *O'Brien,* 282 Mass. 458.

*Decree reversed.*

*Decree to be entered dismissing the bill with costs.*