SAMUEL INGRAM *vs.* EICHEL'S SPA, INC., & others.

Middlesex.    October 6, 1942. — January 27, 1943.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Corporation,* Stockholder. *Equity Pleading and Practice,* Master: reference, report, exceptions to report, report of evidence, recommittal, findings.

Disposition of motions for a discharge of the reference to a master and for an extension of the time for filing his report lay in the discretion of the trial court.

The remedy for failure of a master to comply with a request for a summary of evidence under Rule 90 of the Superior Court (1932) is by motion to recommit.

After the filing of a master's report with objections annexed, a motion by the objecting party to strike out certain of the master's findings was in the nature of additional exceptions, which under Rule 90 of the Superior Court (1932) cannot be filed without a special order of the court.

In the absence of a report of the evidence by a master or of anything in his report to show that his conclusion of fact was based solely on his subsidiary findings, his conclusion bound the trial court and this court if not inconsistent with his subsidiary findings.

Findings by a master that the plaintiff in fact contributed nothing to the capital of a corporation and was not the owner of any of its stock defeated his claim to ownership of the stock although it had been recited in the agreement of association of the corporation that he had subscribed for all the stock and that it had been paid for.

BILL IN EQUITY, filed in the Superior Court on December 6, 1939.

The plaintiff appealed from interlocutory decrees entered by orders of *Goldberg*, J., and of *Swift*, J., and from a final decree entered by order of *Leary*, J.

*E. M. Dangel*, (*L. E. Sherry* with him,) for the plaintiff.

*John J. Sullivan*, for the defendants.

DOLAN, J. This is a bill in equity by which the plaintiff seeks to establish ownership of the entire capital stock (two hundred fifty shares) of the defendant corporation, an accounting, and other relief. The case comes before us on the plaintiff's appeal from certain interlocutory decrees and from the final decree dismissing the bill. The record contains the plaintiff's substitute bill of exceptions dealing with a single subject matter, which is also brought before us by his appeals upon which we deal with the case.

The case was referred to a master and a time was set for the conclusion of hearings before him. Several orders were made thereafter by the judge, extending the time for filing the master's report, discharging the reference to the master, vacating that order, and further extending the time for report. Some of these orders were made ex parte on motion of the master, and others after hearing. In each instance the plaintiff appealed and now argues that, by virtue of these incidents, a situation developed between the plaintiff and the master which rendered the master incapable of exercising toward the plaintiff the unbiased attitude required for the proper performance of his duties. There is

no merit in the appeals from the orders in question or in the argument of the plaintiff with respect to the attitude of the master. The allowance of the several motions in question rested in the sound discretion of the trial judge. See Rule 2 of the Superior Court (1932); *Carleton & Hovey Co.* v. *Burns*, 285 Mass. 479, 484.

Material findings of the master follow: The plaintiff is the husband of the defendant Belle A. Ingram, hereinafter referred to as Belle. In 1929 she and her cousin Caroline P. Eichel purchased the restaurant business located on Cornhill, Boston, known as Cauley's Spa, for $2,000. To finance her part of the arrangement between them, Belle borrowed $2,000 from Jennie P. Ingram, the plaintiff's mother. Miss Eichel contributed $2,000 to the business. Until April 9, 1931, Belle and Miss Eichel operated the restaurant as partners. Belle devoted all of her time to the enterprise, withdrawing each week half of one day's proceeds of the business with which she paid the living expenses of herself and of the plaintiff. The latter occasionally helped out in the restaurant under the direction of the partners. He made no contribution to the capital of the enterprise.

On April 9, 1931, Miss Eichel sold her half interest to Belle for $2,800, who paid that sum in instalments over a period of time from the proceeds of the business. The plaintiff did not contribute any part of the $2,800 paid to Miss Eichel. Belle then became the sole owner of the business. On April 14, 1932, an agreement of association for the incorporation of the business under the name of Eichel's Spa, Inc., was signed by the plaintiff, by Belle, and by Herbert J. Ingram, a brother of the plaintiff, in which it was recited that the two hundred fifty shares of the capital stock were subscribed for by the plaintiff. The plaintiff was elected president, Belle treasurer, and Herbert clerk. They were also elected as directors. The shares were stated to have been paid for in merchandise, stock in trade, machinery, furniture, fixtures and good will. These assets were all owned by Belle. Prior to incorporation Jennie P. Ingram had lent Belle an additional sum of about $1,000 and on May 27, 1932, under the instruction of Belle and the plain-

tiff, the latter's then attorney made out a stock certificate for the two hundred fifty shares in the name of Jennie P. Ingram.  The certificate was signed by the plaintiff and Belle and it was intended to be held by Jennie as security for the money lent by her to Belle.  This was the first and only certificate of stock outstanding until November, 1936.  At that time Jennie P. Ingram had been paid in full, the stock certificate could not be found, and upon advice of an attorney a new certificate was issued to Jennie to correspond to the stub of the original certificate, but the original certificate was produced at the hearings before the master by the plaintiff, who testified that after he separated from Belle in March, 1937, he found it in a book which he took with him from their home at that time.  Belle took the new certificate to Jennie P. Ingram's home, where Jennie, in the presence of Belle and one Frederick Ingram, filled out the assignment on the back of the new certificate representing two hundred fifty shares of stock, wherein she assigned the stock to Belle and appointed the lawyer who had advised its issue, her attorney, to transfer the stock on the books of the corporation.  She signed the assignment which was witnessed by Frederick Ingram, whose relationship to the parties the master stated was not disclosed by the evidence, and delivered the new certificate to Belle.  The master further found that at this time Jennie was the sole stockholder of the corporation; that she intended to and did assign to Belle all her right and title to the stock; that Belle, as the equitable owner of the stock, was entitled to have the stock assigned to her; that the plaintiff knew of the intended transfer and impliedly assented to it; that upon execution of the assignment Belle became entitled to have the corporation issue to her a new certificate for the two hundred fifty shares of stock; "and that she was not then, and is not now, in any way accountable to the plaintiff with respect to said stock."

The master also found that on January 5 and January 8, 1937, new officers were elected, of whom the plaintiff was not one.  In March, 1937, the plaintiff and Belle separated.  No question of the ownership of the business ever arose

between them prior to that time. . In 1936 the plaintiff organized another corporation called "Eichel's Restaurant," in which, Belle had no interest.. On March 24, 1937, Belle transferred one share of stock to Evelyn Eichel and one to Mr. Mahoney (also parties defendant), who together with Belle had been elected directors of the corporation. No consideration was paid by Evelyn Eichel or Mr. Mahoney for these transfers. Under the by-laws of the corporation its directors need not be stockholders. See G. L. (Ter. Ed.) c. 156, § 23.

In conclusion. the master found that the plaintiff never contributed anything toward the capital of the corporation, that he never owned any of its capital stock, that no such conspiracy as alleged in the bill ever existed, and that none of the defendants committed any of the fraudulent acts alleged in the bill.

The plaintiff brought in nine objections, which are appended to the master's report, and requested that the master append thereto a brief and fair summary of so much of the evidence as was necessary for the court to determine the questions of law raised by the objections. The master filed a certificate stating in substance that he denied the request, because the plaintiff did not request him to report any exceptions taken by the plaintiff at the trial, and because no stenographer was selected by the master under Rule 90 of the Superior Court (1932), and that the plaintiff did not furnish him with other than a transcript of portions of the evidence which were insufficient to enable him to comply with the plaintiff's request. If the plaintiff was aggrieved by this action of the master his remedy was by motion to recommit the case to the master for that purpose. *Chopelas* v. *Chopelas*, 303 Mass. 33, 36, and cases cited. Although. the plaintiff did file a motion to recommit the case to the master he later waived it in open court. He cannot therefore now complain of the action of the master. See *Russo* v. *Thompson*, 294 Mass. 44, 46; *Zytka* v. *Dmochowski*, 302 Mass. 63,. The plaintiff filed a motion to strike out twenty-one findings of fact made by the master. Such a motion was in the nature of exceptions and "no additional

exceptions may be filed without a special order of the court." Rule 90 of the Superior Court (1932). *Respro, Inc.* v. *Worcester Backing Co.* 291 Mass. 467, 472. There was no error in its denial. Obviously there was no error in the denial of the plaintiff's motion that the master's report be set aside and that the merits of the case be heard by the judge.

The interlocutory decree overruling the plaintiff's exceptions to the master's report and confirming the report was entered rightly. The exceptions of the plaintiff are based in large part upon objections that we have already considered in the discussion of the various motions filed by him, and upon objections that ultimate findings of the master are inconsistent with his subsidiary findings. We are of opinion, however, that the ultimate findings of the master are consistent with his subsidiary findings, and, accordingly, the ultimate findings were binding upon the trial judge and are binding on us. *Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431, 435.

The plaintiff has argued that the ownership of initial capital stock must be ascertained from the agreement of association in which the plaintiff was named as the sole subscriber; that the issuance of a certificate of stock is not essential to establish the relation of stockholder in a corporation, citing *Atlantic Transportation Co. Inc.* v. *Alexander Shipping Co. Inc.* 261 Mass. 1, 11, and relying upon *Hood Rubber Co.* v. *Commonwealth,* 238 Mass. 369, 372, 373; that its issuance merely gives evidence of a property interest in the corporation in the nature of contract rights or choses in action that may be enforced even though no certificate of stock be issued. The application of these principles, however, to the facts found by the master serves to defeat the plaintiff's claim, since the master found, in substance, that the plaintiff never had any property interest in the corporation; and to support the finding that upon the assignment of the stock to Belle she became entitled to have the corporation issue to her a new certificate for the two hundred fifty shares of stock as the equitable owner of the stock, for the issuance of which she had contributed the entire

consideration. G. L. (Ter. Ed.) c. 155, § 27. *Whitney* v. *Nolan,* 296 Mass. 419. *Johnson* v. *Johnson,* 300 Mass. 24.

*Interlocutory decrees affirmed.*

*Final decree affirmed with costs.*