NEW ENGLAND OVERALL CO., INC. *vs.* CLINTON H.
WOLTMANN & others
(and a companion case between the same parties).

Suffolk.    May 2, 1961. — June 22, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, KIRK, & SPIEGEL, JJ.

*Agency,* Agent's duty of fidelity. *Unlawful Interference. Trade Secret.*
*Equity Pleading and Practice,* Master: motion to strike findings, exceptions to report, summary of evidence, recommittal, findings; Injunction;
Contempt proceeding. *Res Judicata.*

After the filing of a master's report with objections annexed, a motion
by the objecting party to strike out certain portions of the report was
in the nature of additional exceptions, which under Rule 90 of the
Superior Court (1954) cannot be filed without a special order of the
court, and had no standing. [71]
Exceptions to a master's report designed to require him to find certain
facts or to make findings in greater detail or to explain the meaning of
words of common usage in the report raised no questions of law necessitating summaries of evidence under Rule 90 of the Superior Court
(1954) and had no standing. [74-75]
There was no abuse of discretion on the part of a judge hearing a suit in
equity on a master's report not disclosing error on its face in denying
a motion to recommit not accompanied by an affidavit under Rule 46 of
the Superior Court (1954). [75]
Where a corporation exclusively family controlled and managed engaged
successfully for many years in a highly competitive and specialized
business in work and sport clothes, created styles, which varied seasonally, bought from suppliers who would not sell its styles to others, sold
to customers who would buy such clothing only from it and whose credit
standing and foreseeable requirements were known to it, and safeguarded with the utmost secrecy its costs, marketing schedules, styles,

and the identities of and information about its suppliers and customers, such data acquired by the corporation over the years were confidential and entitled to protection in equity, even though no new or secret invention or process or knowledge of special circumstances was involved. [75–78]

In a suit in equity by a family corporation successfully engaged for many years in a specialized clothing business, which had acquired confidential data respecting the styles it created, its suppliers and customers, and other aspects of its internal business practices, against a former sales manager and a former salesman of the plaintiff and a corporation organized by the individual defendants, the final decree properly awarded damages to the plaintiff and enjoined the defendants from soliciting the plaintiff's customers for a reasonable time in a certain territory where it appeared that during their employment by the plaintiff the individual defendants understood the importance of secrecy respecting the plaintiff's confidential data, that while so employed they secretly planned to compete with the plaintiff and organized the defendant corporation for that purpose, that they engaged in double dealings, that the sales manager took away confidential items and listings about customers and suppliers with him and disclosed them to the salesman when they left the plaintiff's employ, and that the individual defendants on behalf of the corporate defendant obtained from the plaintiff's suppliers clothing like that sold by the plaintiff and solicited its customers at cut prices. [78]

In a proceeding to have a defendant adjudged in contempt for failure to comply with a decree in a suit in equity, the merits of that decree are not open for examination. [80]

Unless and until a decree confirming a master's report in a suit in equity is vacated or reversed, the facts set forth in the report are conclusive between the parties notwithstanding that an appeal has been taken from that decree and that a final decree has not been entered. [80–81]

At the hearing of a civil contempt proceeding for disobedience of an interlocutory injunction in a suit in equity, a confirmed master's report in the original suit containing findings material to the contempt proceeding should have been admitted in evidence as conclusive between the parties where the decree confirming the report had not been vacated or reversed. [81]

BILL IN EQUITY, filed in the Superior Court on January 4, 1960, against Clinton H. Woltmann, Raymond Richman, and Zeal, Inc.

A motion to strike out portions of a master's report and a motion to recommit the report were denied, and an interlocutory decree confirming the report was entered, by *Bolster, J.* A final decree after hearing on the master's report was entered by *Lurie, J.*

CONTEMPT PETITION, filed in the Superior Court on June 15, 1960.

The case was heard by *Lurie, J.,* on a master's report.

*Edward O. Proctor, Jr.,* for the defendants.

*Elliot E. Rosenberg,* for the plaintiff.

KIRK, J. We treat these two cases in a single opinion since they are between the same parties and arise out of the same facts. The second case, a contempt proceeding, is but an incident of the first, in which the plaintiff sought to enjoin the defendants from using certain confidential information.

## THE PRINCIPAL SUIT.

The defendants appeal from an interlocutory decree which confirmed a master's report and from a final decree which awarded damages to the plaintiff and which enjoined the defendants from soliciting or communicating with customers of the plaintiff in the New England States and in New York and Pennsylvania. We disregard the defendants' purported appeal from the denial of their motion to strike out certain portions of the master's report. It has no standing before us for the reasons stated in *Respro, Inc.* v. *Worcester Backing Co.* 291 Mass. 467, 472, and *Ingram* v. *Eichel's Spa, Inc.* 313 Mass. 109, 113–114. Rule 90 of the Superior Court (1954), last paragraph.[1]

The master made extensive findings of fact, which we summarize. The plaintiff, a corporation solely owned and controlled since 1903 by a family named Gordon, has been continuously engaged in the manufacture, sale, and distribution of work and sport clothes for men, women, and children to retail dealers throughout New England, and in New York and Pennsylvania. It is a leader and creator of styles in the particular industry, and has about two thousand substantial customers and a very valuable good will. It has always safeguarded with the utmost secrecy all information concerning its internal business, especially the

---

[1] The rule as to striking out parts of a report by an auditor whose findings of fact are not final is, of course, otherwise. See *Cairns* v. *Giumentaro,* 339 Mass. 675, 679.

names, addresses, requirements, and credit standing of its customers, the identity of and dealings with its suppliers, its costs, and the styles for approaching seasons.

On February 12, 1952, the defendant Woltmann, who for many years had been a buyer of large quantities of the plaintiff's merchandise for a New York firm, was hired by the plaintiff as its sales manager. He thereby became, and he knew that he became, the first person outside the Gordon family to hold an authoritative executive and administrative position with the plaintiff and to have access to its innermost secrets. Before he was hired, there was an understanding between Woltmann and the plaintiff that if employed "he would keep inviolate and never use nor divulge to anyone any trade and business secrets and information of the plaintiff that might come to him, especially as to its customers, suppliers, costs and forthcoming lines, nor would he permit the same to be utilized by anyone." Throughout his employment which lasted until November, 1959, Woltmann had full charge of salesmen, the projection of future sales, the maintenance of records of supplies, costs and sales, the control of inventories, and the safeguarding of secret information about the plaintiff's business. To perfect the concealment of the identity of the plaintiff's suppliers he devised a code system of reference to them which he and the Gordon family memorized. He had custody of the written customers' lists and the confidential data relating to the customers. With this information he was better able to perform his duties as sales manager for the plaintiff.

The defendant Richman was in the employ of the plaintiff as a salesman from July, 1947, to November, 1959. He covered territory in the State of New York including New York city. He knew the importance of keeping secret the names, addresses, and credit standing of customers, and was aware of a general custom in the industry that salesmen were not to reveal or use information acquired during their employment to the detriment of their employers.

For the first six and one half years of his employment,

Richman had worked under a written contract with the plaintiff whereby he agreed ''to keep secret and not to divulge to any person, firm or corporation . . . the names, addresses, or any information concerning any customers, prices, policy, or other matters pertaining to the business . . ..'' Thereafter he worked from year to year with certain changes in his basis of compensation ''but with no other changes in the condition of his employment.'' We construe the latter as being a finding that Richman continued in his employment under the same agreement as to confidential matters. Woltmann was aware of Richman's terms of employment.

The master found that the plaintiff's customers were friendly toward the plaintiff and purchased their work and sport clothes exclusively from it. Similarly, the plaintiff's suppliers never sold any of the styles or fashions created by the plaintiff to anyone else. Woltmann had direct contact with both customers and suppliers in his own name, and he had their trust and confidence because of his high position with the plaintiff.

In September, 1958, Woltmann and Richman secretly agreed to compete with the plaintiff, and in the following months surreptitiously advanced their plan. Woltmann, for example, in 1958, bought in his own name from the plaintiff's suppliers merchandise which was of the same design as that planned by the plaintiff for 1959 with the object of selling it to the plaintiff's customers before the plaintiff disclosed the spring and summer line to its own salesmen. The master set forth in chronological sequence the double dealing in which Woltmann and Richman thereafter engaged adverse to the plaintiff's interests while in the employ of the plaintiff. We need not recount it all. In September, 1959, Woltmann, Richman, and one Nahaas organized Zeal, Inc., a corporation, to compete with the plaintiff. The business address of Zeal, Inc., was the same as that of a company in which Nahaas was a partner, and which had credit standing. Woltmann and Richman in person ordered merchandise for Zeal, Inc., from the plaintiff's

suppliers in North Carolina and directed delivery to the Nahaas firm's address. Woltmann left the plaintiff's employ November 13, 1959. On the same day Richman gave notice that he would leave November 23, 1959. Still later on the same day, both informed the plaintiff for the first time that they planned to go into business together. Efforts to dissuade them, including offers of substantial stock ownership in the plaintiff, failed.

Shortly thereafter, the plaintiff learned that many of the confidential items and listings relating to customers and suppliers of the plaintiff were missing. The master found that Woltmann had taken them; and that Woltmann and Richman were soliciting on behalf of Zeal, Inc., and were continuing to solicit both customers and suppliers of the plaintiff. They had obtained from the suppliers merchandise of a manufacture, style, and pattern which could not be distinguished from that sold by the plaintiff without careful examination, and were selling it at cut prices which tended to destroy the plaintiff's trade reputation and good will established over many years. The master found that it was difficult to ascertain the damage which has been done and will be done to the plaintiff's good will and reputation by the defendants' price cutting and efforts to induce customers and suppliers to "break away" from the plaintiff.

The defendants filed forty objections to the master's report which became exceptions by operation of Rule 90 of the Superior Court (1954). *Chopelas* v. *Chopelas,* 303 Mass. 33, 35.

The evidence is not reported. An examination of the exceptions discloses that they do not raise questions of law, but are all designed to require the master (a) to find certain facts desired by the defendants, or (b) to make findings in greater detail, or (c) to explain the meaning of words in common usage which are in the report. In these circumstances, no summaries of evidence are required under Rule 90 of the Superior Court (1954). The exceptions per se are without standing, *Shaw* v. *United Cape Cod Cranberry Co.* 332 Mass. 675, 678, and the defendants do not appear

to contend the contrary. Whether the report should have been recommitted rested in the discretion of the judge. *Buckley & Scott Util. Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498, 508. *Black* v. *Parker Mfg. Co.* 329 Mass. 105, 118. No affidavit under Rule 46 of the Superior Court (1954) was filed in support of the motion. *Cantor* v. *Cantor*, 325 Mass. 719, 721. The report does not disclose error on its face. There was no abuse of discretion in denying the motion to recommit, and no error in confirming the master's report which was complete in all essentials, and was not inconsistent, contradictory or plainly wrong. *Macera* v. *Mancini*, 327 Mass. 616, 621.

We accordingly accept the master's findings as final. *Peabody Gas & Oil Co.* v. *Standard Oil Co. of N. Y.* 284 Mass. 87, 88. *Dodge* v. *Anna Jaques Hosp.* 301 Mass. 431, 435. The question presented is whether the facts found by the master justify the relief granted by the final decree. We first consider the injunctive relief.

In situations where there has been no express contract of an employee not to use or disclose confidential information entrusted to him during his employment, this court has held that, although an employee may carry away and use general skill or knowledge acquired during the course of his employment, he may be enjoined from using or disclosing confidential information so acquired. *Essex Trust Co.* v. *Enwright*, 214 Mass. 507, 511. *Aronson* v. *Orlov*, 228 Mass. 1, 4–5. *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co. Ltd.* 239 Mass. 158. *Horn Pond Ice Co.* v. *Pearson*, 267 Mass. 256, 261. *Junker* v. *Plummer*, 320 Mass. 76, 79. In these cases injunctive relief was granted on the theory that "out of the 'relationship of employer and employee certain obligations arise, including that which precludes an employee from using, for his own advantage or that of a rival and to the harm of his employer, confidential information that he has gained in the course of his employment.'" *Junker* v. *Plummer*, 320 Mass. 76, 79, and cases cited.

The defendants contend that the granting of injunctive relief to protect an employer's confidential information in

the absence of an express contract has been and should be limited to situations involving new or secret inventions and processes or knowledge of special circumstances.

We are unable to accept this contention. The defendants rely heavily upon *Woolley's Laundry, Inc.* v. *Silva,* 304 Mass. 383, where this court reversed a decree enjoining a laundry route solicitor and collector from doing business with customers whose names were on a list furnished by the employer with whom the employee had refused to sign a contract with post-employment restrictions. It was held that the list of customers in the circumstances was not confidential. After a comprehensive comparative review of our cases and others the conclusion was reached that ''The questions to be determined in each case are whether the knowledge or information, the use of which the employer seeks to enjoin, is confidential, and whether, if it be confidential in whole or in part, its use ought to be prevented.'' 304 Mass. at p. 389. In rejecting the defendants' contention, we reaffirm the result and the reasoning of the *Woolley's Laundry* case.

We decide the case on its own facts. We do not rest our decision upon the existence or nonexistence of a restrictive covenant between the plaintiff and the defendants. The duties owed by the defendants to the plaintiff spring from the basic principles of equity as revealed in our own decisions which are in accord with the Restatement 2d: Agency. Section 396 states the proposition as follows: ''Unless otherwise agreed, after the termination of the agency, the agent: (a) has no duty not to compete with the principal; (b) has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. The agent is entitled to use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent . . ..''

There is, of course, nothing secret or confidential about general business principles or methods, nor in general business information, nor in the data routinely gathered in a particular business. As a rule no effort is made to guard such information, and courts rarely would restrain its disclosure.

The findings of the master and the reasonable inferences to be drawn therefrom present a different picture. The plaintiff is a corporation exclusively family controlled and managed for forty-nine years, engaged in a highly competitive business, dealing in a specialized type of wearing apparel the styles of which vary seasonally, buying from suppliers whose identity because of competition had to be kept secret and who would sell the particular style only to the plaintiff once it was determined, and selling to customers who would buy the commodity only from the plaintiff, and whose credit standing and foreseeable requirements were known to the plaintiff from years of business dealings. The exclusive family control for almost a half century coupled with the explicit understanding with Woltmann upon his admission to the inner councils of the plaintiff indicated not only a present intention and future purpose, but also a past policy on the part of the plaintiff, of keeping secret its internal business methods and practices, information, and schedules of marketing. The conclusion that factual data acquired over the years relating to styles, the customers' list and supporting material, and list of suppliers were confidential was right. The use of them by Woltmann in competition with the plaintiff after his employment terminated was a clear breach of duty under the principles earlier mentioned. His abstraction of the records of the plaintiff was also a violation of his duty. His disclosure of the information to Richman and Nahaas was a wrong, and made Richman likewise a wrongdoer in using it because Richman was under an obligation to the plaintiff similar to Woltmann's.

We have considered the public interest aspect of the case, and are aware of the public policy against unreasonably

restraining freedom of employment and the growth of monopolistic businesses. See *Woolley's Laundry, Inc.* v. *Silva,* 304 Mass. 383, 387; Blake, Employee Agreements Not to Compete, 73 Harv. L. Rev. 625. It is generally conceded that the clothing business is a highly competitive one. Within a very narrow segment of it the plaintiff as a family enterprise has prospered for many years, and through its internal business practices it has built a reservoir of good will which has insured, on the one hand, the certainty of an exclusive supply of styles created by it from its suppliers, and, on the other hand, the certainty of a market for its goods from its regular customers. The public interest will not be adversely affected by granting to the plaintiff whatever relief the injunction affords from the duplicity of the defendants.

Injunctive relief was properly granted. The defendants contend that the injunction is too broad. We are inclined to think it is too narrow. There was no order to return the lists which the master found Woltmann had wrongfully taken and which were in the control of all of the defendants; and there was no injunction regarding the use of the secret suppliers' list. The plaintiff has not appealed from the decree, however, and we are not disposed to modify it. The injunction is reasonable as to time. See *Novelty Bias Binding Co.* v. *Shevrin,* 342 Mass. 714.

The defendants raise before us for the first time the question of the computation of damages. It was not the subject of an objection to the master's report nor mentioned as a basis for the motion to recommit. We do not feel obliged to deal with the question, but we have considered it, and find no error.

### THE CONTEMPT PROCEEDING.

The petition for an adjudication of contempt was filed June 15, 1960, after the master in the principal suit had filed his report. The plaintiff stipulated, as it had a right to do, *Root* v. *MacDonald,* 260 Mass. 344, 364, that the petition was brought not for punitive purposes, but for

remedial results in the civil aspects of the case. The plaintiff alleged that the defendants had violated and were still violating the temporary injunction which was in force prior to and during the hearings before the master in the principal case. The interlocutory decree entered January 12, 1960, enjoined the defendants from using or disclosing to any firm or corporation confidential customers' lists, style records or patterns, or other confidential business records acquired by them orally or in written form from the plaintiff.

The case was referred to a master (not the master in the principal suit), hereinafter referred to as the master, in accordance with the form of order of reference prescribed in Rule 86 of the Superior Court (1954).

The master's report, in which he found for the defendants so far as it was a question of fact, was confirmed by interlocutory decree December 15, 1960. A final decree dismissing the petition for contempt was thereafter entered. From this decree the plaintiff appeals. We may also consider the interlocutory decree, from which no appeal was taken, in so far as it erroneously affects the final decree. *New England Inv. Corp.* v. *Sandler,* 329 Mass. 230, 236.

At the hearing before the master the plaintiff offered and the master admitted in evidence the interlocutory decree of July 1, 1960, confirming the principal master's report but excluded the principal master's report itself. Thereupon both parties rested and the master reported the following question of law at the request of the plaintiff: ". . . whether the master's report, which was filed in the main action on May 24, 1960, confirmed by the interlocutory decree dated July 1, 1960, and from which an appeal was taken on July 12, 1960, no final decree having been entered in the original action, constitutes an adjudication of facts found therein binding upon the parties hereto." The master found further that the confirmed report contains findings of fact material and relevant to the hearings, if it is admissible as a binding adjudication of the facts. The final

decree in the principal suit was not entered until December 22, 1960.

It should be noted that the contempt petition, although dealt with in a separate proceeding, is actually an incident of the principal suit. *Winslow* v. *Nayson,* 113 Mass. 411, 420. *New York Cent. R.R.* v. *Ayer,* 253 Mass. 122, 128. *Colabufalo* v. *Public Bldgs. Commr. of Newton,* 336 Mass. 205, 209.

The sole question is whether the defendants complied with the interlocutory decree which contained the temporary injunction. The merits of the original cause are not involved and are not open for examination. *State Realty Co. of Boston, Inc.* v. *MacNeil,* 341 Mass. 123, 124, and cases cited. It is settled that the findings of a master are entitled to no weight whatever until established by confirmation of the report, *Peteros* v. *Peteros,* 328 Mass. 416, 421, and cases cited; *Courtney* v. *Charles Dowd Box Co. Inc.* 341 Mass. 337, 340, but it is equally well settled that a master's report which has been confirmed by interlocutory decree from which no appeal has been taken is conclusive of the facts between the parties. *Samuel & Nathan E. Goldstein, Inc.* v. *Dietz,* 284 Mass. 548, 549. *Perry* v. *Oliver,* 317 Mass. 538. *Tucker* v. *Poch,* 321 Mass. 321, 322.

We think that an appeal from an interlocutory decree confirming a master's report does not alter the conclusion that the facts found in the confirmed report remain conclusive between the parties unless and until the decree is vacated in the trial court or is reversed in appellate proceedings. When the report is confirmed the case passes from the phase of dispute as to the facts to the phase of deliberation as to the legal effect of the established facts. As Sheldon, J., said in *C. A. Briggs Co.* v. *National Wafer Co.* 215 Mass. 100, 108, in commenting upon a master's report which had been confirmed, ''The record of the former suit rightly was admitted in evidence. The case had been fully heard by the master, and he had made a comprehensive report in which he had stated his findings upon all the questions of fact that were raised before him. . . . It

might have been modified or reversed in part or recommitted to the master if any error appeared to have been made, or if any good reason for such action had been shown.   But in the meantime the presumption existed that the facts had been correctly found, that proper principles of law had been followed and that all matters had been rightly dealt with. . . .   The confirmation of the master's report by the decree made the findings of fact contained in that report conclusive between the parties.''

It is true that in the *Briggs* case, in *E. C. Bowman & Son Co.* v. *Hern,* 239 Mass. 200, 204, and in *Millett* v. *Temple,* 285 Mass. 87, 88, where similar language was used, a final decree had been entered.   But this does not change the principle.   Even in the absence of a final decree it has been held that a confirmed master's report is conclusive of the facts between the parties.   See *Walker* v. *E. William & Merrill C. Nutting, Inc.* 302 Mass. 535, 536, 539.

In summary, a decree confirming a master's report establishes the facts; a final decree settles the legal effect of the facts, and whatever had been in issue thereupon becomes res judicata; all, however, subject to review by a court of last resort.

We are of the opinion that the confirmed report of the master in the principal case should have been admitted in evidence as a conclusive determination of the relevant facts found therein.   Further hearing is required on the issue of contempt and damages suffered by the plaintiff.

### CONCLUSION.

The interlocutory and final decrees in the principal case are affirmed.   The interlocutory and final decrees in the contempt case are reversed, and the contempt case is remanded for further proceedings in accordance with the foregoing opinion.

*So ordered.*