Ferrara, John S., J.
INTRODUCTION
This action was brought by co-plaintiffs, inter-related insurance agencies, against their former employee after she left their employ and opened her own competing agency. The plaintiff employers assert claims for breach of contract (Count I) and tortious interference with business relationships (Count II). Plaintiffs have moved for injunctive relief, seeking to compel the defendant to honor “non-competition” agreements that it claims she signed during her employment.
After hearing argument and reviewing all materials submitted, the plaintiffs’ motion is hereby DENIED.
BACKGROUND
The co-plaintiffs, Mancuso-Nowak Insurance Agency, Inc. (“Mancuso-Nowak”) and Edward Saska Insurance Agency, Inc. (“Saska”) share the same business location at 252 Boston Turnpike Road, Shrews-bury, Massachusetts. Tbe defendant, Iwona Verrette (“Verrette”), was hired by the co-plaintiffs in 2005 as a customer service representative. Her duties included secretarial and administrative tasks and customer service. She was an hourly or salaried employee.
In 2007, Ms. Verrette obtained a license to sell insurance. She continued in the employment of the co-plaintiffs as a customer service representative and a licensed insurance broker, acting as agent for the plaintiffs. She received both a salary and commissions for sales of insurance to new customers that she brought to the agencies.
On or about August 27, 2009, the co-plaintiffs had Ms. Verrette execute an “Employment Agreement” with each of the agencies, which contains non-competition provisions. Those restrictive covenants provide that Ms. Verrette, for a period of 36 months after she leaves employment with the plaintiffs, may not:
(i) divert business from or interfere with the goodwill of the Corporation; (ii) solicit, attempt to obtain or accept insurance business of any nature from any customer or account on the books of the Corporation at the time his [sic] employment shall terminate or within 12 months prior thereto or from any person, firm or Corporation, the business of which has been solicited on behalf of the Corporation by the Employee or others in the employ of the Corporation at any time during the 12 months prior to the termination of his [sic] employment; (iii) aid or assist anyone in soliciting, attempting to obtain or accepting insurance business of any nature from any customer or account; [or] (iv) act or serve as an advisor, consultant or risk manager for any of said accounts or customers with respect to insurance, self insurance, risk management or other related matters.
The agreements do provide that the employee can purchase “the customer list that (she) produced ... at the rate of two times commissions over a three-year period.”
The consideration for an employee’s execution of the agreement is recited as “. . . the Employee’s employment by the Corporation, and . . . the payment of a certain salary and/or commissions and/or such other compensation and/or benefits as may be agreed upon from time to time.” At the time Ms. Verrette signed the agreements she was receiving a salary and forty percent (40%) of the total commission paid by an insurance company for any policy she sold. In December 2011, the plaintiffs unilaterally reduced Ms. Verrette’s commission rate to twenty percent (20%) of the total commission paid.
Ms. Verrette resigned on April 1, 2012, and informed the principals of plaintiffs that she was going to open her own agency. However, prior to resigning, Ms. Verrette wrote to customers of plaintiffs that she had brought to the businesses and addressed the letter “to all my valued customers.” She advised those customers that she was leaving plaintiffs’ agencies, thanked them “for being loyal customers through the years,” and advised them she was terminating her employment with the agencies on April 1, 2012. Ms. Verrette included the name, address, and telephone facsimile number of her new agency, the Rogowski-Verrette Insurance Agency, LLC, along with her own cell phone number and e-mail address, below her signature. (Defendants’ Exhibit 3.)
On April 25, 2012, Ms. Verrette met with the plaintiffs to discuss purchasing the “book of business” that she had generated as a producing agent. There was no agreement finalized for the purchase of a customer list and plaintiffs did not provide Ms. Verrette with a list of customers or any other documents. Thereafter, Ms. Verrette’s new insurance agency assisted a number of the former customers of plaintiffs in cancelling their *457 existing policies, and made them customers of her new agency.
In opposing plaintiffs’ motion, Ms. Verrette asserts various defenses, including: (1) the non-compete agreement should not be enforced because it seeks to prevent ordinaiy competition as opposed to protecting the good will of the plaintiffs; (2) the agreement is not supported by adequate consideration; (3) a change in the terms of the employment relationship negated the enforceability of the agreement; (4) the agreement is unreasonably broad in its geographic scope and time; and (5) to enforce the agreement would be against public policy because of the difficult economic times and the hardship it imposes on the defendant in finding employment. In addition, defendant argues that the plaintiff cannot show that it would suffer irreparable harm if the motion is denied, but that defendant would suffer irreparable harm if the motion is allowed.
DISCUSSION
“ ‘[W]hen asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party’s claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk if irreparable harm which granting the injunction would create for the opposing party . . . Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.’ (Footnote omitted.) Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). ‘In an appropriate case, the risk of harm to the public interest also may be considered.’ Brookline v. Goldstein, 388 Mass. 443, 447 (1983).” GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993).
It is well settled under Massachusetts law that an employer may utilize a non-competition agreement as a condition of hiring or retaining an employee and that continued employment is sufficient consideration to enforce such a covenant. See Slade Gorton & Co., Inc. v. O’Neil, 355 Mass. 4, 9 (1968); Economy Grocery Stores Corp. v. McMenamy, 290 Mass. 549, 552 (1935). Such an agreement may be enforced through a grant of injunction. Blackwell v. E.M. Helides, Jr., Inc., 368 Mass. 225, 228-29 (1975). The determination of whether such a covenant should be enforced through the court’s injunctive authority involves a weighing of the reasonable needs of the former employer for protection against harmful conduct of the former employee against the reasonableness of the restraint imposed on the former employee and the public interest. Id., citing All Stainless, Inc. v. Colby, 364 Mass. 773, 778 (1974).
To satisfy a court that an injunction should issue enforcing the terms of such an agreement, the employer must demonstrate that the agreement (a) is necessary to protect a legitimate business interest of the employer, (b) is supported by consideration, (c) is reasonably limited in all circumstances, including time and space, and (d) is otherwise consonant with public policy. Whittinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 102-03 (1962). See also, Blackwell v. E.M. Helides, Jr., Inc., 368 Mass. at 228; All Stainless, Inc. v. Colby, 364 Mass. at 778.
Legitimate business interests that an employer may seek to protect include trade secrets, confidential information, and good will. New England Canteen Service, Inc. v. Ashley, 372 Mass. 671, 674 (1977); New England Tree Expert Co. v. Russell, 306 Mass. 504 (1940); Kroeger v. Stop & Shop Cos., Inc., 13 Mass.App.Ct. 310, 316 (1982), review denied, 386 Mass. 1102 (1982). A covenant not to compete is not enforceable if its application merely protects the employer from ordinary competition. Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 287-88 (1974); Richmond Bros., Inc. v. Westinghouse Broad Co., 357 Mass. 106, 111 (1970).
The Agreement’s Non-Solicitation Provisions Do Not Seek to Restrain Ordinaiy Competition
During the course of her employment with plaintiffs, Ms. Verrette learned of information regarding customers of the plaintiffs, including their names, addresses, other contact in formation, the types of policies they had, and the expiration dates of policies. An employer is permitted to protect confidential customer lists through non-compete agreements. See Jet Spray Cooler, Inc. v. Crompton, 361 Mass. 835, 842 (1972); New England Overall Co. v. Woltmann, 343 Mass. 69, 77 (1961).
Courts have also recognized a legitimate business interest in an employer’s goodwill with its customers. Marine Contractors Co., supra, at 287-89. When the defendants hired Ms. Verrette, she was not required to bring customers with her, and did not do so. Had Ms. Verrette brought customers with her when she began working for plaintiffs, she would retain that customer goodwill during her employment; it would be hers, not the employer’s. Ms. Verrette was not an independent contractor; she was paid a salary and commissions for her work. The parties anticipated and understood that Ms. Verrette would generate goodwill for the plaintiffs through her diligence, skills, and customer relations, and that in doing so she was acting on behalf of plaintiffs.'
As a result of her employment with plaintiffs, Ms. Verrette was in a position where she could harm the good will of plaintiffs because her close association with the plaintiffs’ customers might cause them to associate her, and not the plaintiffs, with products of the type sold to the customer through her efforts. See National Hearing Aid Centers, Inc. v. Avers, 2 Mass.App.Ct. 285, 289 (1974). Indeed, in her letter to plaintiffs’ customers, she refers to them as her loyal customers. Plaintiffs are entitled to protect the good *458 will of their business. All Stainless, Inc., v. Colby, supra; New England Canteen Service, Inc. at 674; Kroeger, 13 Mass.App.Ct. at 316.
The non-solicitation provisions of the agreements at issue here prohibit Ms. Verrette from usurping plaintiffs’ confidential information and goodwill without paying for it, and are not intended to interfere with ordinary competition. However, the language prohibiting Ms. Verrette from working for an agency that accepts “insurance business of any nature from any customer or account” is unduly restrictive. Ms. Verrette is entitled to engage in ordinary competition with plaintiffs.
The Agreement Was Not Unreasonably Broad with Respect to Geographic Area or Duration
If a restrictive covenant is too broad in time, in geographic area, or in any other respect, it will be enforced only to the extent that it is reasonable. All Stainless, Inc., 364 Mass. at 778. The determination of the reasonableness of an agreement always turns on the specific facts applicable to the particular case. Marine Contractors, supra, at 287; Novelty Bias Binding Co. v. Shevrin, 342 Mass. 714, 716 (1961). Covenants not to compete are divisible, and may be modified by a Court and enforced in part or in a manner that is reasonably necessary for the protection of the goodwill of an employer’s business. See Sherman v. Pfefferkorn, 241 Mass. 468, 474 (1922); Kroeger v. Stop & Shop Companies, Inc., 13 Mass.App.Ct. at 312; Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. 488, 498 (1986).
The non-solicitation provisions of the agreements cannot be said to be unreasonable with respect to either duration or geographic scope. Three years is within the acceptable range in terms of duration of a covenant not to compete. Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. at 498 (five years); Blackwell v. E.M. Helides, Jr. Inc., 368 Mass. 225 (1975) (three years). There is no geographic restriction in the subject agreements.
There Was Adequate Consideration for the Agreement at the Time of Execution
Ms. Verrette contends that there was no “new” consideration given for her execution of the agreement because she was already working as a procuring agent when the agreements were signed. The defendant cites a Superior Court case, Cypress Group, Inc. v. Strides & Associates, 17 Mass. L. Rptr. 436, 2004 WL 616302 (Mass.Super.), for the proposition that, “Any time a restrictive covenant is signed by an employee, the employer must provide some additional clear benefit.” Id., citing Marine Contractors, 365 Mass. at 287-88. Marine Contractors involved a non-compete agreement executed upon termination of the employee’s employment in consideration for an acceleration of payment of monies the employee was owed over time. The consideration for the agreement was deemed adequate.
As stated above, an employer may utilize a non-competition agreement as a condition of retaining an employee and continued employment may be sufficient consideration to enforce such a covenant. See Slade Gorton & Co., Inc. v. O’Neil, 355 Mass. at 9; Economy Grocery Stores Corp. v. McMenamy, 290 Mass. at 552. The subject agreements recite that continued employment and the payment of agreed upon compensation constitute the employees’ consideration for execution of the agreements. The consideration for Ms. Verrette’s executing the agreement was not merely her continued employment, but also the promise that she would be paid salary, commissions and benefits, as agreed upon, and have the opportunity to purchase the book of business that she had developed and might further develop for a calculable amount to be paid over a three-year period. There was adequate consideration for the agreements at the time of their signing.
Ms. Verrette avers that her compensation was unilaterally changed by plaintiffs in December 2011; the percentage of commissions she was to receive was cut in half. She did not agree to this change. Defendant cites F.A. Bartlett Tree Expert Co. v. Barrington, 353 Mass. 585, 587 (1968), for the proposition that “if the employee’s job ‘materially changes’ after the signing of the non-solicit, the agreement is rendered inoperable and the employer needs to obtain a new one.” (Defendant’s Opposition, at p. 9.) In F.A. Bartlett Tree, the Court found that the parties had abandoned and rescinded by mutual consent the earlier employment agreement containing the pertinent non-compete provision and had entered into a new employment relationship that included no such non-compete provision. The employer provided the employee with a new employment agreement, which the employee refused to sign. Id. at 587.
There are undoubtedly situations where changes of this sort amount to no more than modifications of the original agreement, leaving the other provisions in effect. This is not such a case. An examination of the 1948 contract reveals that, in addition to references to pay, territory and position, it contains only a restrictive covenant and a termination clause. It is hard to see how changing pay and territory in 1960 and changing pay, territory and position in 1965 amount to mere modifications of the 1948 contract.
Id. at 587.
The evidence presented here is somewhat less compelling than that in F.A. Bartlett Tree. There was no change in position, duties or responsibilities, relocation of the employee, or execution of a new employment contract. The terms of the non-competition clause were not altered. However, Massachusetts courts have consistently refused to grant injunctive relief enforcing a non-compete agreement where such covenants were entered prior to material changes in *459 the employment relationship. See, e.g., Lycos, Inc. v. Jackson, 18 Mass. L. Rptr. 256 (Mass.Super.Ct. 2004) (denying injunctive relief for enforcement of non-compete agreement finding that “(bjecause a material change in the employment relationship between [defendant] and [plaintiff] voided the previous Agreement, and because defendant did not sign the Offer Letter incorporating the old Agreement, no written nondisclosure, noncompetition and developments agreement now exists between the parties”); R.E. Moulton, Inc. v. Lee, 18 Mass. L. Rptr. 157 (Mass.Super.Ct. 2004) (denying request for a preliminary injunction based on a non-compete agreement where employee’s position and compensation changed, but no new agreement was signed and the employer did not notify the employee that he was still subject to the non-compete clause); Cypress Group, Inc. v. Stride & Assocs., Inc., supra (motion for preliminary injunction.seeking enforcement of restrictive covenant denied because employees did not. sign new restrictive covenant after their promotions to new positions at company)..
The agreements specified that consideration for the non-compete provisions was “the payment of a certain salary and/or commissions and/or such other compensation and/or benefits as maybe agreed upon from time to time.” The rate of compensation to be paid Ms. Verrette and other employees was “an essential and inducing feature of the contract.” See Lease-It, Inc. v. Massachusetts Port Auth., 33 _Mass.App.Ct. 391, 397 (1992). A jury might find that the unilateral pay decrease by plaintiffs was a material breach of the agreement that relieved Ms. Verrette of any obligation to adhere to the non-compete provisions. See Worcester Heritage Soc’y, Inc. v. Trussell, 31 Mass.App.Ct. 343, 345 (1991).
The Court cannot say that plaintiffs are likely to succeed on the merits of their claim for violation of the agreements by Ms. Verrette.
Tortious Interference with Contracts or Business Relationships
The plaintiffs have brought a claim for tortious interference with their business relationships with its clients. Neither the plaintiffs Verified Complaint, nor the affidavit of the principal, Joseph C. Mancuso, Jr., allege improper means utilized by Ms. Verrette, or an improper motive on her part, either of which is required to establish tortious interference with contract or business relationships. See Cavicchi v. Koski, 67 Mass.App.Ct. 654, 658 (2006).
However, in an affidavit in support of her opposition to plaintiffs motion, Ms. Verrette avers, “I informed my customers that I would be leaving my employment with the Plaintiffs and thanked them for being my customers.” Attached to the opposition is a sample letter or e-mail sent by Ms. Verrette to certain of plaintiffs’ customers in which she informed them that she would be leaving her employment with plaintiffs, thanked them for being her loyal customers, and gave
the name, address and fax number of her new agency, and her cell phone number and e-mail address. The defendant cites a Superior Court case, Am. Express Fin. Advisors v. Walker, 9 Mass. L. Rptr. 242 (Mass.Super.Ct. 1998), for the proposition that a Superior Court judge “refused to grant injunctive relief . . . after the former employees had sent a far more solicitous letter to their clients.” The judge in American Express Financial did not deny the injunction because he did not find the letter constituted solicitation. He denied it on other grounds. The letter sent by Ms. Verrette was a solicitation of plaintiffs’ clients.
In Augat, Inc. v. Aegis, Inc., 409 Mass. 165 (1991), the Supreme Judicial Court defined a limited basis for liability of employees who solicit their employer’s customers while still working for them.
It is important to define the limited basis for liability we recogriize in this case. An at-will employee may properly plan to go -into competition with his employer and may take active steps to do so while still employed. See Meehan v. Shaughnessy, 404 Mass. 419, 435 (1989); Chelsea Indus., Inc. v. Gaffney, 389 Mass. 1, 10 (1983). Such an employee has no general duty to disclose his plans to his employer, and generally he may secretly join other employees in the endeavor without violating any duty to his employer. Id. at 12, n.20 . . .
There are, however, certain limitations on the conduct of an employee who plans to compete with his employer. He may not appropriate his employer’s trade secrets. See Eastern Marble Products Corp. v. Roman Marble, Inc., 372 Mass. 835, 838-42 (1977). He may not solicit his employer’s customers while still working for his employer (see Chelsea Indus., Inc. v. Gaffney, supra at 11-12 [as to executive employees]), and he may not carry away certain information, such as lists of customers (New England Overall Co., Inc. v. Woltmann, 343 Mass. 69, 77 [1961]). Of course, such a person may not act for his future interests at the expense of his employer by using the employer’s funds or employees for personal gain or by a course of conduct designed to hurt the employer.
Id., at 172-73.
The Verified Complaint does not allege that Ms. Verrette improperly solicited plaintiffs’ customers while still in their employment. It may be that plaintiffs only learned of Ms. Verrette’s admitted actions after filing of their complaint and motion. The record is insufficient to establish the timing and extent of any solicitation of customers by Ms. Verrette, or the harm, if any, suffered by plaintiffs. The Augat claim has not been pled.
CONCLUSION AND ORDER
For the foregoing reasons, plaintiffs motion is DENIED.